## UNITED STATES v. EARWOOD.

### No. 7161.

Circuit Court of Appeals, Fifth Circuit.

June 12, 1934.

HUTCHESON, Circuit Judge, dissenting.

Randolph C. Shaw, Sp. Asst. to Atty. Gen., and Lawton H. Ware, Atty., Veterans' Administration, of Atlanta, Ga., for the United States.

Thomas Howell Scott, of Atlanta, Ga., and William T. Townsend, of Cartersville, Ga., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Louise Earwood, as guardian of Thomas C. Earwood, got verdict and judgment against the United States on a war risk. insurance policy. Two points are insisted on for reversal: One that no disagreement was alleged or proved sufficient to give the plaintiff the right to sue; the other that the court should have directed a verdict on the merits in favor of the defendant. The first alone need be considered. The facts alleged and proved as to it are that Earwood was discharged from the army on July 22, 1919, paying no premiums thereafter. On August 4, 1924, a guardian was appointed for him because of insanity. On February 26, 1925, the guardian, claiming that the insanity dated back to Earwood's discharge and then totally and permanently disabled him, made application through her attorney by letter to the Veterans' Bureau for the insurance benefits. On March 20, 1925, the Acting Regional Manager at Atlanta replied that Earwood's disability of dementia præcox was not thought to be permanent and that his rating of temporary total had been confirmed. On April 25, 1925, the guardian requested that the file be transmitted to the Central Office at Washington, D. C., because of dissatisfaction with the rating. On June 24, 1925, the Chief of Claims Division at Atlanta advised that a new examination of Earwood "did not warrant a permanent and total rating at the present time," but that the file was being forwarded to Section C, Central Office, Board of Appeals, at New Orleans, La., for a decision. July 11, 1925, the Chief of Claims Division at Atlanta wrote the guardian: "You are advised that after considering all evidence in the case of the above named claimant it is the opinion of the Central Office, Board of Appeals, that his disability is not such as to warrant a permanent and total rating at the present time." The matter rested thus until this action was filed on July 3, 1931, with service acknowledged by the district attorney on July 2d.

■ This action against the United States could be brought only by permission of and on the terms fixed by the Congress. By the Act of June 7, 1924, 38 USCA § 445, an action was permitted but only "in the event of disagreement as to claim." The Act of May 29, 1928, 45 Stat. 964, enacted: "No suit shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made, or within one year from the date of the approval of this amendatory Act, which-

ever is the later date." Insane persons were to have three years from the removal of their disability to bring suit; and the limitation was suspended for the period elapsing "between the filing in the Bureau of the claim sued on and the denial of the claim by the Director." By the Act of July 3, 1930, 46 Stat. 992 (38 USCA § 445) the date of limitation was extended to July 3, 1931, and the term "disagreement" was declared to mean: "A denial of the claim by the director or some one acting in his name on an appeal to the director." The point has not been argued, but we assume that the disability of insanity is to be considered as removed upon the appointment of the guardian who sues. Aside from the act of 1930, this guardian was barred from suit on July 3, 1931, because, assuming that a disagreement had been reached sufficient for a suit before the act of 1930 defined that term more strictly, she had allowed more than six years to elapse from the accrual of the cause of action on the policy, and more than three years from the time of her appointment, and more than one year from the date of the Act of May 29, 1928. Counting out the four months and thirteen days from February 26, 1925, to July 11, 1925, during which the claim was under consideration, would not help her. She could not have sued except as the Act of July 3, 1930, allowed it, and upon the terms which it fixed. One of those terms was that the right of appeal to the Director, which had existed under all the regulations and which was evidently contemplated by section 5 of the World War Veterans' Act, as amended, 38 USCA § 426, in providing that the Director "shall decide all questions arising under this chapter; and all decisions of questions of fact and law affecting any claimant to the benefits of Parts II, III, or IV of this chapter shall be conclusive except as otherwise provided herein," must have been exercised and must have failed. The guardian, before suing, ought to have reviewed the status of her claim and to have considered that she had never appealed to the Director and thus secured such a disagreement as was required by the act under which she was about to sue. Section 2 of the Consolidating Act substituted for the Director the Administrator of Veterans' Affairs, but it expressly made everything subject to review by him on appeal. 46 Stat. 1016, 38 USCA § 11a. The claim was not ripe for suit and should have been dismissed. Fouts v. United States (C. C. A.) 67 F.(2d) 249.

The case of Westling v. United States (C. C. A.) 64 F.(2d) 464, 465, is pressed upon us. We agree that the Act of July 3, 1930, is generally prospective in its operation, but we cannot agree to the construction and effect there given its words which follow the definition of "claim" and "disagreement": "This section, as amended (being 38 USCA § 445), with the exception of this paragraph (that is, the definitions of claim and disagreement), shall apply to all suits now pending against the United States," etc. They plainly mean that, while the new definitions are not to apply to pending suits, they shall apply to suits thereafter filed. No vested right exists in a supposed disagreement. The Congress, we think, required every claimant who had not already sued to reach a final disagreement by appeal to the Director, or his successor the Administrator, and for this purpose gave another year plus such time as might elapse between the making of the claim and his denial of it. There was not even hardship in this requirement. It suffices that Congress thought proper to make it. This claimant had no right to sue in disregard of it. The Regulations of November 1, 1931, dealt with in Boan v. United States (D. C.) 3 F. Supp. 219, and Raymond v. United States (D. C.) 4 F. Supp. 757, are not involved here.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (dissenting).

I cannot agree with the majority that the 1930 act was intended to, or that it does, require that a claim which has been as thoroughly canvassed and definitely and finally rejected by the Director through his agencies in accordance with the rules then prevailing as this one was must be reopened in the Bureau and before the Director. I cannot follow the majority in rejecting the holding of Westling v. United States. I think it was correctly decided. I dissent, then, from the opinion of the majority that the suit was prematurely brought for want of a disagreement, and from its judgment dismissing it for want of jurisdiction.

I agree that the judgment should be reversed, but the reversal should be on the merits for the error in not instructing for the defendant. Because, by the turn the majority have given the case, the merits are not really before us for discussion, I shall content myself with a brief statement of my reasons for thinking the plaintiff's case not made out. The evidence does undoubtedly show

that many years after the policy lapsed, to wit, three years, plaintiff's condition was such as to sustain a verdict that he was then totally and permanently disabled. The evidence does not admit of serious doubt that no such condition existed when he was discharged from military service as physically and mentally sound. To hold him totally and permanently disabled in 1919 because he turned out to be that way in 1922 is to attempt, as was done in Cunningham's Case (C. C. A.) 67 F. (2d) 714, to bridge the gap between the crisis in 1922 and his discharge in 1919 by evidence all too vague and inadequate.