772

## UNITED STATES v. JOURNEY.*
### No. 1346.

Circuit Court of Appeals, Tenth Circuit.
March 21, 1936.

R. T. McCluggage, Asst. U. S. Atty., of Topeka, Kan. (Summerfield S. Alexander, U. S. Atty., of Topeka, Kan., Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Fendall Marbury, Sp. Asst. to Atty. Gen., and Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C., on the brief), for the United States.

E. D. Mikesell, of Fredonia, Kan. (J. B. Journey, of Nevada, Mo., and Samuel M. January, of Denver, Colo., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

Journey brought this action to recover on a term policy of War Risk Insurance. Trial by jury was waived by a written stipulation.

At the close of the evidence, counsel for the United States moved for judgment, first, on the ground that there was no disagreement, and second, there was no substantial evidence establishing that Journey

*Rehearing denied April 29, 1936.

was totally and permanently disabled on or before September 1, 1919, and that his policy lapsed on that date for non-payment of premiums.

The trial court overruled the motion and entered judgment for Journey.

In McLaughlin v. United States (C.C. A.10) 74 F.(2d) 506, at page 507, the Court said:

"War risk insurance policies are contractual obligations of the government, yet they confer no right of action on the insured or his beneficiary independently of the sovereign will. The rule that the United States may not be sued without its consent is all embracing. Lynch v. United States, 292 U.S. 571, 581, 54 S.Ct. 840, 78 L.Ed. 1434; United States v. Earwood (C.C.A.5) 71 F.(2d) 507. One of the conditions upon which this consent has been granted, is the existence of a disagreement, and such disagreement is a jurisdictional prerequisite."

Statutes enacted prior to July 3, 1930, made disagreement a condition precedent to suit, but did not define the term disagreement. See McLaughlin v. United States, supra. Section 4 of the Act of July 3, 1930, 46 Stat. 992 (see 38 U.S.C.A. § 445) defined the terms "claim" and "disagreement" as follows:

"The term 'claim,' as used in this section, means any writing which alleges permanent and total 'disability at a time when the contract of insurance was in force, or which uses words showing an intention to claim insurance benefits, and the term 'disagreement' means a denial of the claim by the director or someone acting in his name on an appeal to the director. This section, as amended, with the exception of this paragraph, shall apply to all suits now pending against the United States under the provisions of the War Risk Insurance Act, as amended, or this chapter."

The resolution of January 28, 1935, 38 U.S.C.A. § 445c, in part reads as follows:

"A denial of a claim for insurance by the Administrator of Veterans' Affairs or any employee or agency of the Veterans' Administration heretofore or hereafter designated therefor by the Administrator shall constitute a disagreement for the purposes of section 445 of this title. This section is made effective as of July 3, 1930, and shall apply to all suits pending on January 28, 1935, against the United States

under the provisions of section 445 of this title."

It clarified the definition of "disagreement" but left the definition of a "claim" unchanged.

The court in McLaughlin v. United States, supra, held that "Congress by excluding from the definitions of 'claim' and 'disagreement' all pending suits, intended, under the maxim expressio unius est exclusio alterius, that such definitions should apply to all suits thereafter filed." See, also, Chavez v. United States (C.C. A.10) 74 F.(2d) 508; United States v. Earwood (C.C.A.5) 71 F.(2d) 507.

The original complaint in this case was filed on September 29, 1930. It follows that the claim relied on here, must come within the definition of claim set out in the Act of July 3, 1930, supra. In other words, it must be in writing and must allege permanent and total disability at a time when the contract was in force; or use words showing an intention to claim insurance benefits.

On or about August 1, 1919, Journey made out a claim on form 526, a copy of which is set out in note 1.[1]

It will be noted that question (11) and the answer thereto reads as follows:

[1] Treasury Department
Bureau of War Risk Insurance
Form 526

File No. C..............
Supplemental
Application of Person Disabled In and
Discharged from Service
READ WITH GREAT CARE.

You must furnish the information called for in this application and support your answers with proof called for in these instructions, as part of your claim under the act of Congress of October 6, 1917. Every question herein must be answered fully and clearly. Answers and affidavits should be written in clear, readable hand, or typewritten, and if you do not know the answer to a question, say so.

1. Forward with this application a certified copy of your certificate of discharge from the service. If at the time of your discharge or resignation you obtained from the Director of the Bureau of War Risk Insurance a certificate that you were then suffering from injury likely to result in death or disability, the original or a certified copy of such certificate of disability should be forwarded with this application as part of your claim.

2. You should also inclose a report by your attending or examining physician. If you are receiving treatment in any hospital, sanitarium, or similar institution, you may submit the hospital report or record of your case, showing your physical condition, the origin, nature, and extent of your disability, and the probable duration of such disability.

3. If you have a wife or children, the fact that your wife and children are living must be shown by the affidavits of two persons, who should also state whether you and your wife and children are living together or apart, and whether or not you are divorced.

4. Your marriage must be proved by a certified copy of the public or church record, or if this is not obtainable, by the affidavit of the clergyman or magistrate who officiated, or by the affidavits of two eyewitnesses to the ceremony, or of two persons who have personal knowledge of your marriage. If either party was divorced from a former wife or husband, that fact should be shown by a verified copy of the court order or decree of divorce.

5. Ages of children must be shown by a certified copy of the public record of birth, or the church record of baptism, or if these are not obtainable, by the affidavits of two persons, giving the name of the child, the date and place of birth, and the names of both parents.

6. If claim is made on account of a stepchild, it must be shown by the affidavits of two persons whether such child is a member of the claimant's household, and if claim is made for an adopted child a certified copy of the court letters or decree of adoption must be submitted.

7. If additional compensation is claimed for a dependent parent, relationship to such parent must be shown by a certified copy of the public record of the claimant's birth, or the church record of his baptism, or, if such evidence can not be obtained by the affidavits of two persons. Whether or not the dependent parent for whom compensation is claimed is a widow or widower should be shown by the affidavits of two persons, who must state the specific amount of annual income from each separate source, the location and value of all property, real and personal, owned by said dependent, his or her physical condition, employment and earnings, and the amount of the disabled person's average monthly contribution to the support of the dependent parent. The parent claimed for should be one of the persons to make affidavit to these facts of mental competent.

8. The affidavits of two persons required in support of your claim should be made on the blank form on the last page of this application.

All papers which you send this bureau

"Nature and extent of disability claimed Pains in chest and under shoulder, left. General weakness. 'All-in' feeling, all time. 50%."

When Journey stated his disability was fifty per cent., he clearly negatived an intention to claim insurance benefits, since to have been entitled thereto, he would had to have been totally and permanently disabled. Kemp v. United States (C.C. A.7) 77 F.(2d) 213; Ross v. United States (C.C.A.7) 77 F.(2d) 212.

must bear your full name, former rank, and organization. The number C...... must also appear upon each paper.

.........................

2-4718          Deputy Commissioner.
ODJ          Penalty

Sec. 25. That whoever in any claim for family allowance, compensation, or insurance, or in any document required by this act, or by regulation made under this act, makes any statement of a material fact, knowing it to be false, shall be guilty of perjury and shall be punished by a fine of .not more than $5,000, or by imprisonment for not more than two years, or both.

1. Full name James Randall Journey.

2. Address 708 South Main St., Nevada, Missouri.

3. Under what name did you serve? James Randall Journey (a) Serial No. 2847996.

4. Color white. Date of birth July 15, 1895. Place of Birth Nevada, Mo.

5. Make a cross (X) after branches of service you served in: General service X Limited Service ...... Army X Navy ...... Marine Corps ...... Coast Guard ........

6. Date you last entered service April 30th 1918. Place of entry Nevada, Mo.

7. Rank or rating at time of discharge Private.

8. Company and regiment or organization, vessel, or station in which or on which you last served Det. of Patients, Camp Hosp. Fort Riley, Kansas.

8a. State fully any other service in the military or naval forces of the United States Co. 164th D. B./Co. A., 354th Inf./

9. Date and place of last discharge August 1st, 1919 Fort Riley, Kansas.

10. Cause of discharge W. DCircular No. 77, Nov. 1918.

11. Nature and extent of disability claimed Pains in chest and under shoulder, left. General weakness. "All-in" feeling, all time. 50%.

12. Date disability began October 4th, 1918.

13. Cause of disability Gassed. In line of duty.

14. When and where received October 4th, 1918.

15. Occupations and wages before entering service. Auto Mechanic $40.00 per week.

16. Last two employers: Moss and Urner (Ford Auto Agents) Nevada, Mo. 3 years. J. H. Kaylor (Ford Auto Agent) Nevada, Mo. 22 years.

17. Occupations since discharge, dates of each and wages received: if less than before service, why None.

18. Present employer None.

19. Name and address of doctor or hospital treating you None.

20. Are you confined to bed? None. Do you require constant nursing or attendance? None.

21. Name and address of nurse or attendant None.

22. Are you willing to accept medical or surgical treatment if furnished? Yes.

23. Are you single, married, widowed, or divorced? Single.

24. Times married None.

25. Date and place of last marriage .......

26. Times present wife has been married .......

27. Maiden name of wife .......

28. Do you live together? .......

29. Have you now living a child or children, including stepchildren, and adopted children, under eighteen years of age and unmarried? None.

30. If so state below full name of each child, and date of birth; if a stepchild or adopted child so state, and give date child was adopted by you or became a member of your household.

31. Have you a child of any age who is insane, idiotic, or otherwise permanently helpless? None.

32. State whether your parents are living together, separated, divorced, or dead. Living Together.

33. Give name and address of each parent living (mother) Jennie V. Journey, (father) James B. Journey, Nevada, Missouri.

34. Age of mother About 45. Age of father About 60.

35. (a) Is your mother now dependent upon you for support? Partially. (b) Is your father now dependent upon you for support? Partially. (c) If so, your average monthly contribution to your mother, $30.00. Your father, $ None.

36. (a) Value of all property owned by your mother? $ None. Your father? $ None. (b) What is the annual income of your mother? $ None. Your father? $600.00.

Furthermore, the evidence disclosed that the Bureau of War Risk Insurance treated it as a claim for compensation solely and at no time passed upon or denied it as a claim for insurance benefits.

Journey testified that he wrote a letter to the Veterans' Bureau in 1930 in which he stated he felt himself "entitled to war risk insurance." Neither the letter nor a copy thereof was introduced in evidence and there was no proof that it was ever passed upon or denied by the "Administrator of Veterans' Affairs or any employee or agency of the Veterans' Administration * * * designated therefor by the Administrator."

We conclude that Journey failed to establish a disagreement.

The judgment is reversed with instructions to grant the United States a new trial.

McDERMOTT, Circuit Judge (concurring).

I cannot spell out a technical disagreement and therefore concur. But it seems very clear that this veteran is entitled to his money; I think he has had shabby treatment at the hands of his government, and he ought to be paid if it takes a special act of Congress to do it.

Journey went into the army a strong, able-bodied automobile mechanic. He came out a physical and nervous wreck and throughout the years has been able to do no more than potter around from one trifling task to another. And it is no wonder. With but twelve weeks training he was thrown into the front line and gassed. He had not recovered from that when the battle of San Mihiel was fought. After two or three days and nights of advance guard detail and in the front lines, he volunteered for out-post duty. Instead of being relieved in twenty-four hours, he was left in a shell hole four feet across, within fifty yards of the German lines, for five days and nights; rain, dysentery, dead Germans, and inability to raise his head caused him to attempt to crawl back to his own lines; he became entangled in the barbed wire, 250 men opened fire on him, and he crawled back to his hole where he lost consciousness for two days. When he was finally carried back, a shell burst in his party, killing one man and wounding Journey. Twice he was blown by shell fire from improvised hospitals.

From October, 1918, until August, 1919, he was confined in army hospitals. Totally disabled—in a hospital—he was discharged with a record of "physical condition good." He protested, but the sergeant laconically answered, "I didn't write it."

Four days before discharge, an army officer detailed to advise the wounded came to the hospital with a blank form furnished by the government, and told him it was an application for compensation and insurance. No one can decipher that form and say with certainty whether it was designed for compensation, or insurance, or both. This officer testified he told this enlisted man it was an application for both compensation and insurance, and the officer filled out the answer as to 50 per cent. disability. How the officer arrived at the conclusion that a man in a hospital bed was only 50 per cent. disabled is difficult to understand. But it is not for an enlisted man to question his officer detailed for that particular task. The claim was sworn to before the Camp Insurance Officer, and inquired in detail about his war risk policy.

I think, under the facts here, it is a good claim for insurance. The government

37. Did you make an allotment of your pay? Yes.

38. If so, to whom? (Mother) Jennie V. Journey. Amount $15.00.

39. Give number of any other claim filed on account of this disability, and place filed None.

40. Did you apply for War Risk Insurance? $10,000.

41. When and where? May 1918 Camp Funston, Kansas.

42. Insurance certificate number Answers not know.

43. Name of beneficiary (Mother) Jennie V. Journey.

I make the foregoing statements as a part of my claim with full knowledge of the penalty provided for making a false statement as to a material fact in a claim for compensation or insurance.

James Randall Journey,
Signature of Claimant.

Subscribed and sworn to before me this 1st day of August 1919 by James Randall Journey claimant, to whom the statements herein were fully made known and explained.

H. H. Taylor, Jr., 2nd Lieut. Inf. Camp Insurance Officer. Notary Public. Base rate of pay $30.00 Discharged August 1st, 1919 2-4718

should be charged with the knowledge of its own officer detailed for this task and its own records of its own hospitals.

But the government argues that if it is a good claim, it has not been denied. The government has had it for 16 years and that is long enough to agree or disagree. The government argues that the Bureau treated it as a claim for compensation; that it did so because of the claim of 50 per cent. disability. But the government, from its own records, knew he was in its own hospital and was totally disabled when the claim was made out, and the slightest inquiry from its own officer would have disclosed the answer was written in by the officer and was an error.

If the claim is one for insurance, then there is no disagreement after 16 years. The Bureau ought, it seems to me, agree now and pay this veteran, for, as the trial court found, he is and has been since his gruelling experience at San Mihiel, totally and permanently disabled. He paid his premiums and the government ought to live up to its contract.