## MEISNER v. UNITED STATES.

(District Court, W. D. Missouri, W. D.    February 28, 1924.)

No. 5367.

1. **Army and navy** ⬁51½, New, vol. 12A Key-No. Series—**Persons with whom adult insured had resided held to stand "in loco parentis," so as to render their daughter permissible beneficiary.**

Where insured, when 24 years old, sick, friendless, penniless, and without known relatives, wandered into the home of a farmer where he received shelter and medical attention, and was treated as a member of the farmer's family, for three years, and regarded the farmer and his wife as his mother and father, and no agreement was ever made as to remuneration for his services on the farm, *held*, that the farmer and his wife stood "in loco parentis," within War Risk Insurance Act, § 22, as amended December 24, 1919, by adding subdivisions 4a and 5a (Comp. St. Ann. Supp. 1923, § 514mmm), and hence, under subdivision 5a, their daughter was a permissible beneficiary.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, In Loco Parentis.]

2. **Army and navy** ⬁51½, New, vol. 12A Key-No. Series—**Expressed wishes of deceased soldier effectuated, if possible.**

It is the policy of the courts, if possible, to effectuate the expressed wishes of a deceased soldier concerning his war risk insurance policy.

3. **Parent and child** ⬁15—**When person stands "in loco parentis."**

A person standing in loco parentis to a child is one who has put himself in the situation of a lawful parent, by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption. The assumption of the relation is a question of intention.

4. **Parent and child** ⬁1—**The word "children" defined.**

The word "children," when used irrespective of parentage, may denote that class of persons under the age of 21, as distinguished from adults; but its ordinary meaning, with respect to parentage, is sons and daughters of whatever age.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Child—Children.]

At Law.   Action by Christine Meisner against the United States. Judgment for plaintiff.

George B. Reinhardt, of Kansas City, Mo., for plaintiff.

C. C. Madison, U. S. Atty., and H. L. Donnelly, Asst. U. S. Atty., both of Kansas City, Mo., and John M. George, Atty. U. S. Veteran's Bureau, of Washington, D. C.

VAN VALKENBURGH, District Judge.   [1] This is a suit to recover on a policy of war risk insurance.   The plaintiff is the beneficiary named by the deceased soldier, Robert R. Parks.   The case was tried in part upon an agreed statement of facts, which, in so far as is material to this discussion, contains the following recitals:

Robert R. Parks was born May 4, 1890.   In the month of November, 1914, Mr. and Mrs. Henry Grafke were engaged in farming near Kansas City, in the state of Kansas.   The plaintiff is their daughter, and resided with her parents prior to November, 1914, up to and in-

⬁For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cluding June, 1918, and thereafter. In the month of November, 1914, the said Robert R. Parks came to the home of Mr. and Mrs. Grafke, and while there he worked about the farm, but received no stipulated compensation for his services; that from November, 1914, to April 10, 1917, he remained continuously with Mr. and Mrs. Grafke and worked about the farm, without any agreement for wages or any other compensation for his services. He ate at the same table with the other members of the family. He was never married, had no living parents, brothers, or sisters, or any living relatives by blood, known to him during said period. He entered the military service of the United States in the city of Chicago, Ill., on April 18, 1917. January 18, 1918, he executed his application for insurance in the sum of $10,000, naming the plaintiff his sole beneficiary, and describing her in said application as his cousin. The policy was subsequently issued as of that date. Robert R. Parks lost his life on June 6, 1918, during an air raid in France, while he was in the military service of the United States. All of the premiums due the United States on said insurance policy were paid in full up to the time of his death.

In addition thereto at the trial the recital of facts in the petition was admitted as part of the agreed facts submitted to the court. These recitals are as follows:

"Plaintiff states that in November, 1914, Robert R. Parks, sick, friendless, and penniless, wandered into the farm home of Mr. and Mrs. Grafke, near Kansas City, in the state of Kansas, who are the father and mother of the plaintiff, and applied for shelter and medical attention; that he was given medical attention, food, and lodging, and recovered from his illness. Plaintiff further says that upon his recovery Robert R. Parks continued to live with her father, mother, and herself; that he was considered a member of their family; that Robert R. Parks referred to and so treated and considered Mr. and Mrs. Henry Grafke as his father and mother, and treated and considered plaintiff, then Christine Grafke, as his sister, and that plaintiff, in turn, considered, treated, and referred to Robert R. Parks as her brother, and her father and mother treated, considered, and spoke of him as their son; that at no time did any agreement, express or implied, exist between Robert R. Parks and Mr. and Mrs. Grafke as to any remuneration for his services rendered by him on the farm of Mr. and Mrs. Henry Grafke; that said Parks worked about the farm as would a son of the Grafkes, and he was given what he needed or asked for in the way of clothing, necessaries, and spending money; that in all respects he was treated and considered as a son of Mr. and Mrs. Grafke, and as a brother of Christine Meisner; that the said relations existed from November, 1914, until April, 1917; that said Parks was never married, had no living parents, sisters, or brothers, nor any relatives known to him, during said period."

Plaintiff claims under subdivisions 4a and 5a of the amendment to section 22 of the War Risk Insurance Act, approved December 24, 1919 (41 Stat. 371 [Comp. St. Ann. Supp. 1923, § 514mmm]), which read as follows:

"(4a) The terms 'father' and 'mother' include stepfathers and stepmothers, fathers and mothers through adoption, and persons who have stood in loco parentis to a member of the military or naval forces at any time prior to his enlistment or induction for a period of not less than one year: Provided, that this subdivision shall be deemed to be in effect as of October 6, 1917."

"(5a) The terms 'brother' and 'sister' include the children of a person who, for a period of not less than one year, stood in loco parentis to a member of the military or naval forces of the United States at any time prior to his en-

listment or induction, or another member of the same household as to whom such person during such period likewise stood in loco parentis: Provided, that this subdivision shall be deemed to be in effect as of October 6, 1917."

[2, 3] Plaintiff claims that under all the facts agreed upon Mr. and Mrs. Grafke stood in loco parentis to Robert R. Parks, and that she was a sister under the definition set forth in section 5a. The government contests this interpretation of the act. The deceased soldier, having no known relatives of the blood, out of affection designated the plaintiff as the beneficiary in his policy of insurance. It is the policy of the courts, if possible, to effectuate the expressed wishes of a deceased soldier. Practically the sole question presented is whether Mr. and Mrs. Henry Grafke, under the agreed facts, stood in loco parentis to the soldier. If they did, the plaintiff is a sister within the definition laid down in section 5a, and may recover. Our attention is invited to the established rule of construction that Congress, in the employment of terms, used them in their accepted legal sense and in accordance with common understanding. We are also reminded that courts at all times in interpretation seek to carry out the spirit and purpose of legislation.

"A person standing in loco parentis to a child is one who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption. The assumption of the relation is a question of intention." 29 Cyc. 1670.

In Black's Law Dictionary, p. 604, the following definition is given:

"In the place of a parent; instead of a parent; charged, fictitiously, with a parent's rights, duties and responsibilities."

In Re Estate of David Moran, 151 Mo. 555, 52 S. W. 377, the Supreme Court of Missouri holds that:

"The law places no limit upon the age of the child to be adopted. So that, where the child is 22 years of age at the time of his adoption, he is just as capable of taking by inheritance as one 19 years of age adopted by the same instrument."

[4] The word "children," when used irrespective of parentage, may denote that class of persons under the age of 21 years of age as distinguished from adults; but its ordinary meaning, with respect to parentage, is sons and daughters of whatever age. It is frequently so used with reference to those who stand in the place of parents and have assumed the parental relation. Congress evidently had this relationship in mind when it provided that the provisions of subdivisions 4a and 5a should apply to persons "who have stood in loco parentis to a member of the military or naval forces *at any time prior* to his enlistment or induction for a period of not less than one year." The provision contains no limitation as to age. It was open to any member of the military or naval forces. If an adult is a legal subject of adoption, which formally establishes the relationship of parent and child, and if one, who assumes the obligations incident to the parental relation and takes the place of a parent without going through the formalities necessary to a legal adoption, stands in loco parentis to another, why should age condition the nature of the relationship? No

sound reason appears why a person may not assume a parental relation toward an adult as well as toward a minor. The responsibilities and obligations may be fewer, but substantial ones remain.

The deceased soldier, under the allegations of the petition, admittedly was regarded as a son of the family. Grafke and his wife so treated, considered, and spoke of him; they gave him what he needed, or asked for, in the way of clothing, necessaries, and spending money. They nursed him through illness and furnished medical attention. He did not occupy the position of one who could have demanded pay for his services. Schrimpf, Administrator, v. Settegast and another, 36 Tex. 296. It is true that reported cases deal uniformly with minors, because such are the ones toward whom this relationship is generally assumed, but that fact cannot alter the principle involved. In the absence of any prohibition in the law, either express or implied, that relationship, in the face of the obvious purpose of Congress, cannot reasonably be limited to minors.

The allegations of the petition are not to be considered as formal and perfunctory. Plaintiff produced at the hearing an imposing array of witnesses to support these allegations. Upon investigation, the government conceded that the proofs would overwhelmingly sustain the allegations made. It, therefore, stipulated their truth. Robert R. Parks, on the fields of France, made the supreme sacrifice. He designated expressly the plaintiff as the recipient of his insurance. His wish should be respected, and, in my opinion, no valid reason appears why that wish should be denied.

The judgment accordingly will be for the plaintiff, and proper judgment entry may be prepared and entered.