LEYERLY v. UNITED STATES et al.
No. 3456.

Circuit Court of Appeals, Tenth Circuit.
May 19, 1947.

Albert Ellis Radinsky, of Denver, Colo., for appellees Eva Alice and Harry Taylor.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

On December 20, 1941, the Congress amended the National Service Life Insurance Act of 1940, 38 U.S.C.A. § 801 et seq., 54 Stat. 1008, to provide in material part that if any person in active military or naval service on or after October 8, 1940, dies in line of duty within 120 days after December 20, 1941, without having in force at the time of death National Service Life or other war risk insurance aggregating at least $5,000, the said person shall be deemed to have applied for and to have been granted insurance in the sum of $5,000 as of the date of his entry into active service, or October 8, 1940, whichever is later. The insurance thus automatically and gratuitously provided was payable in accordance with Section 602(h) of the 1940 Act, supra, "except that payments hereunder shall be made only to the following beneficiaries in the order named * * * (C) If no widow or widower entitled thereto, or child, to the dependent mother or father of the insured, if living, in equal shares." Sec. 10, Pub.Law 360, approved Dec. 20, 1941, 55 Stat. 844, 846, 38 U.S.C.A. § 802(d) (2).

John Robert Leyerly entered the military service on or about March 20, 1941, and died in line of active duty on February 8, 1942, without widow or child. At the time of his death, he had applied for and had been granted National Service Life Insurance in the sum of $2,000, and had designated his brother and sister as beneficiaries. Thus, automatic or gratuitous insurance provided under the 1941 Amendment, supra, in the sum of $3,000 is payable to his dependent mother or father, if living, in equal shares.

Neither the original nor the Amendatory Act defined the terms "parent," "father" or "mother," and to clarify existing legislation, Congress on July 11, 1942, added subsection (f) to Section 601 of the 1940 Act as follows: "The terms 'parent,' 'father,' and 'mother' include a father, mother,

John H. Tippit, of Denver, Colo., for appellant.

82

father through adoption, mother through adoption, persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year, * * *." Sec. 7 of Pub. Law 667, 56 Stat. 657, 659, 38 U.S.C.A. § 801(f).

This lawsuit is primarily a contest between Harry and Eva Alice Taylor, as persons claiming to have stood in loco parentis to the insured, and Helen Leyerly, the natural mother, for the $3,000 insurance. The trial court held for the Taylors and Helen Leyerly has appealed.

Helen Leyerly and Eva Alice Taylor each filed timely claims with the Veterans Administration for the payment of the insurance benefits. The Veterans Administration recognized the natural mother as the person who last bore that relationship to the insured, and accordingly proposed to pay her the insurance benefits. When Eva Alice Taylor's claim was denied by the Veterans Administration, she brought this suit jointly with her husband, Harry Taylor, in the District Court under Section 617 of the Act of 1940, 38 U.S.C.A. § 817, to recover the insurance, alleging that at the time of the insured's death, they stood in loco parentis to him, and are dependent father and mother within the meaning of the Act. The joint complaint alleged the timely filing of the claim and its denial by the Veterans Administration. The prayer was for a judgment against the Government for $3,000, to be paid in accordance with the terms of the Act, with interest and attorney fees.

The Government answered, admitting the insured's entry into the service, his death as alleged, and that the sum of $3,000 was payable as automatic or gratuitous insurance to qualified beneficiaries. The answer specifically denied, however, that the Taylors were dependent father and mother within the meaning of the Act. It admitted the filing of a claim with the Veterans Administration by Eva Alice Taylor, and its denial; that a consequent disagreement contemplated by Section 617 existed between her and the government, but specifically denied that her husband had ever filed a claim, or that the requisite

"disagreement" existed between the government and him. Jurisdiction of the court over the suit of Harry Taylor was challenged.

By way of "counterclaim for interpleader," the government alleged the filing of a claim for the insurance by Helen Leyerly, the natural mother; that "substantial questions exist (1) as to whether the defendant is obligated for said insurance; and (2) if obligated, whether it is obligated to Eva Alice Taylor, one of plaintiffs herein, or to Helen Leyerly, decedent's mother, or someone else, pursuant to the provisions of the National Service Life Insurance Act of 1940, as amended, and that in order that all claims to said insurance benefits may be judicially determined and a multiplicity of suits thereby avoided, it is essential to determine the extent, if any, of this defendant's obligation, and the person or persons to whom this defendant is obligated." The prayer was that Helen Leyerly be made a party to the suit, and that the court adjudge the liability of the government, if any, and to whom.

Thereafter Helen Leyerly, upon order of the court, was made a third party defendant, and she answered alleging that the father of the insured was deceased; that she was the dependent mother of the insured, and therefore entitled to the proceeds of the life insurance. She specifically denied that Harry Taylor had ever filed a claim with the Veterans Administration, or that a "disagreement" existed between him and the government. She prayed judgment for the amount of the insurance, with interest and attorney fees.

After hearing on the issues as thus cast, the trial court found that the Taylors having reared the insured and acted as his parents since he was five and one-half months old, until he entered the service, stood in loco parentis, and being dependent upon him for support, were dependent mother and father within the meaning of the Act. The court also found that Helen Leyerly, the natural mother, being unable to rear the insured because of illness, did not last bear the relationship of parent to him, but "relinquished" care, custody and

control to the Taylors when he was five and one-half months old. A joint judgment was entered for the Taylors in the sum of $3,000, and the action was dismissed as to Helen Leyerly.

The government has not appealed from this judgment, but Helen Leyerly's first contention on appeal is that the court lacked jurisdiction of the subject matter as respects appellee, Harry Taylor, because the prerequisite "disagreement" did not exist between him and the government when suit was filed.

The jurisdiction of the court in this class of cases is conferred by Section 617 of the 1940 Act, as amended by Section 6 of the 1942 Amendment, 56 Stat. 659. It pertinently provides that "In the event of disagreement as to any claim arising under this chapter, suit may be brought in the same manner and subject to the same conditions and limitations as are applicable to the United States Government Life (converted) Insurance under the provisions of sections 19 and 500 of the World War Veterans Act, 1924, as amended * * *."

Section 19 of the 1924 Act, as amended, 38 U.S.C.A. § 445, and as applicable here, provides in material part that "In the event of disagreement as to claim, * * * under a contract of insurance between the Veterans' Administration and any person or persons claiming thereunder, an action on the claim may be brought against the United States. * * * All persons having or claiming to have an interest in such insurance may be made parties to such suit * * *. In all cases where the Veterans' Administration acknowledges the indebtedness of the United States upon any such contract of insurance and there is a dispute as to the person or persons entitled to payment, a suit in the nature of a bill of interpleader may be brought by the Veterans' Administration in the name of the United States against all persons having or claiming to have any interest in such insurance * * *."

▮ Construing the foregoing statute, we have pointed out that a suit on a war risk insurance contract is a suit against the Government, and that one of the con-

ditions of its consent to be sued is the existence of a "disagreement" between the Veterans Administration and the claimant. In other words, a disagreement is a jurisdictional prerequisite to the maintenance of a suit on the insurance contract. McLaughlin v. United States, 10 Cir., 74 F.2d 506; United States v. Journey, 10 Cir., 82 F.2d 772. And a disagreement arises only when a claim has been filed with the Veterans Administration, and rejected. Wilson v. United States, 10 Cir., 70 F.2d 176. We have said that the purpose of requiring that a claim be filed as a prerequisite to the maintenance of a suit, is to give the government notice that a claim is being asserted, and thus afford it an opportunity to make investigation of the facts and determine its liability before incurring the expense of litigation. Johnson v. United States, 10 Cir., 102 F.2d 729. See also Coffey v. United States, 7 Cir., 97 F.2d 762, 117 A.L.R. 940; United States v. Wallace, 10 Cir., 123 F.2d 484; United States v. Brundage, 6 Cir., 136 F.2d 206.

As a jurisdictional basis for its judgment, the court found that "the plaintiffs filed a claim for insurance benefits * * *; that said claims were denied by the Administrator of Veteran Affairs, as disclosed by letter dated June 5, 1945." But appellees admit, as they must, that Harry Taylor did not file a claim with the Veterans Administration, rather they rely upon the claim filed By Mrs. Taylor, its denial, and consequent disagreement, as conferring jurisdiction of the court over the entire subject matter.

▮ The insurance payments being payable to the "dependent mother or father of the insured, if living, in equal shares," it would seem that the right of each to the benefits provided should be separate and distinct, and that the claim of one therefor and its denial without reference to the other, would not constitute a "disagreement" as to both. But, it does not necessarily follow that the court did not acquire jurisdiction to hear and determine the claims of all persons having an interest in the insurance benefits.

▮ The requisite "disagreement" did exist between the United States and a person claiming the insurance. An action was

brought against the United States, and jurisdiction was thus conferred upon the court to "hear and determine" the controversy. All persons having or claiming to have an interest in such insurance were proper parties to the suit. Indeed, the United States interpleaded the appellant, Helen Leyerly, as a party to the suit "in order that all claims to said insurance benefits may be judicially determined and a multiplicity of suits thereby avoided." True, Helen Leyerly had filed a claim, but it had not been denied, and no disagreement existed between her and the Administration. On the contrary, the Administration acknowledged its indebtedness to her for the insurance and was prevented from paying it only because of the suit of Eva Alice Taylor. Harry Taylor was not interpleaded, nor was he made a party to the suit, but he was assuredly a proper party, as one having an interest in the insurance. By joining in the suit of his wife, the Administration had full knowledge that he was claiming an interest in the insurance when it filed its counterclaim for interpleader to determine the extent of its liability and the persons to whom it was liable.

■■ The government does not consent to be sued by implication, and consent to be sued should not be extended beyond the plain terms of the authorizing statute. Price v. United States and Osage Indians, 174 U.S. 373, 19 S.Ct. 765, 43 L.Ed. 1011; Eastern Transportation Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472; Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235; Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784. Here, however, suit against the government was specifically authorized in the event of a disagreement between the Administration and any person or persons claiming the insurance, and where the Veterans Administration acknowledged its indebtedness and there was a dispute as to the persons entitled to the insurance, the Administration was authorized to bring suit. In either case, all parties having or claiming to have an interest in the insurance were proper parties. A disagreement arose; a suit was brought; the government answered and interpleaded, praying for a full and complete determination of the controversy. Having assumed the role of a suitor, it thereby subjected itself to the procedural rules of the court as any other suitor. Cf. Guaranty Trust Co. v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224. The joinder of Harry Taylor, as a party plaintiff, was certainly permissive pleading. See Federal Rules of Civil Procedure, rules 20 and 22, 28 U.S.C.A. following section 723c.

The plain purpose of the statute authorizing the government to sue and be sued in this loss of cases is to provide a comprehensive and expeditious disposition of the controversy, of which the court is specifically given jurisdiction. There is no good reason to torture the language of the authorizing statute in order to arrive at an irrational result. The liability of the government is not extended nor enlarged beyond the scope of the authorizing statute or the pleadings of the government thereunder. We conclude that the court acquired jurisdiction of the subject matter and of the parties, and was empowered to hear and determine the entire controversy, as cast by the pleadings.

On the merits, it is said that the trial court erred in holding that the Taylors ever stood in the relationship of loco parentis to the insured, because, as his natural mother, Helen Leyerly was entitled to the insurance in the natural order of things, unless she voluntarily relinquished the right, or was deprived of it by due process of law; that she was at all times mentally incapable of voluntarily relinquishing the right, and therefore could not have been involuntarily deprived of it. It was on this premise that the Administrator determined that Helen Leyerly was entitled to the insurance.

The evidence shows, as indicated by the trial court, that Helen Leyerly became mentally ill soon after the birth of the insured, and that she remained mentally incapable of voluntarily relinquishing or being legally deprived of any right which she possessed as the natural mother of the insured. Thus it must be conceded that if her relationship to her son gave her any vested right to the insurance, she would not lose it by any act

or omission on her part. Nor was it superseded by the imposition of any other relationship.

■ The automatic insurance involved here was first provided by Congress in 1941 as a gratuity to fulfill a moral obligation to the dependents of a serviceman who died in line of duty without having fully availed himself of the insurance benefits accorded by the 1940 Act. See Congressional Record, July 2, 1942, p. 6116, 6117. The serviceman did not contract for the insurance, and could not direct its disposition. It was within the sole power of Congress to bestow its bounty upon persons of its choice. Accordingly, it specifically directed the manner and order of payment to a prescribed class of beneficiaries, including a surviving dependent mother or father.

Thereafter, the Congress recognized that without definitive legislation, it might well be held that only natural parents of the servicemen were eligible to become beneficiaries of the insurance. In order to make its original purposes clear, it took pains to define the terms "parent," "father," and "mother" to include not only natural parents, but those who stood in loco parentis to the serviceman for a period of not less than one year prior to his entry into the service. Section 601(f) of the 1940 Act, as amended, supra.

The proposed amendment was accompanied by explanatory reports which leave no doubt of the Congressional purpose to make sure that the person or persons who last bore and exercised the parental relationship would be recognized as beneficiaries of the automatic insurance. See Senate Report No. 1430, House Report No. 2312, 77th Congress, 2d Session. When the legislation was under consideration by the House, a member of the Ways and Means Committee in charge of it stated that one of its purposes was to place the parents who last bore that relationship in precedence over other parents; "In other words, a person who stood in the relationship of loco parentis to the soldier for not less than a year immediately prior to his entrance into the active service would take precedence over a natural parent." Congressional Record, July 2, 1942, p. 6117.

■ It is thus clear that Congress contemplated a relationship or status based upon facts, and not upon the circumstances of birth. Since loco parentis is a status, not a right, the acquisition of it by the Taylors did not deprive the mother of any right. They simply acquired the status because of the incapacity of the mother to act as the parent. No rights accrued under the legislation until the death of the insured, at which time the right to the insurance depended upon the factum of parental relationship.

■ The statute does not define the term loco parentis and the common law concept therefore controls. The relationship, as the term implies, is a standing in the place of, or instead of, a parent; one charged fictitiously with a parent's rights, duties and responsibilities. See Black's Law Dictionary, p. 604; Vol. 1 Bouvier's Law Dictionary, Rawle's Third Rev., page 1522. The rights and liabilities arising out of the relationship are exactly the same as that of a parent and child. Young v. Hipple, 273 Pa. 439, 117 A. 185, 25 A.L.R. 1541; Cashen v. Riney, 239 Ky. 779, 40 S.W.2d 339; Austin v. Austin, Neb., 22 N.W.2d 560; Fitzpatrick v. Hudson Coal Co., 159 Pa.Super. 53, 46 A.2d 589. The assumption of the relationship is primarily a question of intention, to be shown by the acts, conduct and declaration of the person alleging to stand in that relationship. Meisner v. United States, D. C., 295 F. 866; Miller v. United States, 8 Cir., 123 F.2d 715.

■ It will be presumed of course that the natural mother last bore the parental relationship, but the evidence here shows without contradiction that when the natural mother became mentally ill and incapable of exercising parental care, the Taylors, as the insured's paternal aunt and uncle, took him into their home and reared him as their child until he finished high school. The father of the child also lived in the Taylor home for a while, and once suggested that they legally adopt the insured. The natural father eventually went to California and died there without exercising any parental care or contributing to the child's support. After the mother was discharged from the mental institution, she

visited the child, but never exercised any parental dominion over him. When the insured finished high school, he enrolled in the Civilian Conservation Corps with the permission of the Taylors. While thus enrolled, he corresponded with the Taylors, and when on leave came to their home. Immediately upon the end of his term, he returned there and asked permission to reenroll, but Harry Taylor suggested that he go to California to visit his natural father, who was quite ill. Eva Alice Taylor was also in California at that time, and the insured remained there until his father died a short time later. Soon thereafter, he entered the military service, after having obtained permission of the Taylors. These facts fully support the findings of the trial court that the Taylors did acquire the relationship of loco parentis. Cf. Cantu et al. v. Southern Pac. Ry. Co., Tex.Civ.App., 166 S.W.2d 963.

It is next argued that if the relationship of loco parentis ever existed between the Taylors and the insured, it was co-existent with the supporting facts, and was terminated when he was no longer dependent upon them for support, education and maintenance. On this premise, it is said that the relationship, if existent, terminated when the insured left the Taylor home to enter the Civilian Conservation Corps, or when he returned and went to California, or in any event, when he entered the military service.

There is authority for the proposition that the relationship, once established, is discontinued or terminated when the parent no longer owes any duty to support and maintain. In other words, "one cannot stand in loco parentis to an adult." See Howard v. United States, D.C., 2 F.2d 170, 175. If the relationship is a mere technical conception, depending strictly upon support and maintenance, there is good reason for the argument that the relationship was discontinued when the insured left the Taylor roof to enter the Civilian Conservation Corps, or when he went to California.

■ But we think the roots of the relationship, once established, go deeper than that. It is true, support and maintenance are of the essence of natural parenthood, and would therefore constitute an essential element of artificial parenthood. But there is no good reason to hold that the relationship ceases to exist, or could not be perpetuated beyond the age of dependency, see Meisner v. United States, D.C., 295 F. 866; or that it ceases to exist simply because the child temporarily leaves the family fireside. Dix v. Martin, 171 Mo.App. 266, 157 S.W. 133. The relationship is not governed purely by pecuniary considerations. The parent cannot recover for services rendered the child, or the child from the parent, even though the child is of age and lives in a home of his own. The status, when once established, is presumed to continue, and one who avers its discontinuance has the burden of proving it. Young v. Hipple, supra. In our case, the conduct of the insured and the Taylors toward each other, from the time he entered the Civilian Conservation Corps until he entered the armed services, is wholly consistent with the natural parental relationship; and is inconsistent with any intention on the part of either to sever or discontinue it. We hold that the relationship did exist when the insured entered the service.

If, as contended, the insured's entry into the military service operated to discontinue the parental relationship between him and the Taylors, no person standing in that relationship could ever be eligible for the insurance benefits, because under Section 9 of the 1942 Amendment, the insurance is payable to the parent or parents "who last bore that relationship." 38 U.S.C.A. § 802 (h) (3) (c). Moreover, such a construction would render meaningless the definition of "father" and "mother" in Section 601(f) as persons who have stood in loco parentis to a serviceman "at any time prior to entry into active service for a period of not less than one year * * *," and thus defeat the manifest Congressional purpose.

■ Finally, it is argued that the Taylors were not "dependent mother or father" within the meaning of the Act. The trial court has found from the evidence that they were dependent, and we think this finding is amply supported by the evidence. True, the Taylors owned a farm and derived some revenue from it, but they were both in their

late sixties and unable to cultivate it. The law surely does not contemplate that the father or mother shall be destitute or wholly dependent upon the insurance benefits in order to survive.

We conclude that the Taylors were dependent father and mother, and that they last bore that relationship. The judgment is affirmed.