**O'BRIEN v. UNITED STATES et al.**

**Civ. No. 10360.**

United States District Court
D. New Jersey.

June 14, 1949.

Edward J. Gilhooly, Newark, N. J., for plaintiff.

Edward V. Ryan, Assistant U. S. Atty., Newark, N. J., for defendant United States of America.

James E. Fagan, Newark, N. J., for remaining defendants.

MEANEY, District Judge.

This is a suit against the United States to recover the proceeds of a National Service Life Insurance policy. The insured, Reverend E. Polhemus, a Chaplain, was a member of the Order of St. Benedict. While in the service he applied for and was granted a NSLI policy in the amount of $10,000., designating as beneficiary the "Abbot of St. Mary's Abbey, (Major Superior)". Plaintiff, the Abbot of St. Mary's Abbey, claimed the proceeds of the policy on the death of the insured. The Veteran's Administration, however, finally denied the claim. The question presented is whether the plaintiff stood in the relationship of parent, "in loco parentis," to the insured and thus came within the class of beneficiaries permitted by the statute. 38 U.S.C.A. § 802(g).

The evidence adduced at the trial shows that Eugene E. Polhemus at the age of 18 registered as a student in St. Benedict's Preparatory School in Newark, N. J., indicating an intention to become a member of St. Mary's Abbey. His mother and father were deceased. He was accepted in the Abbey as a student in 1932 and from that time received his education and maintenance at the expense of the Order and by direction of the Abbot thereof. In 1935 he was accepted as a member of the Order of St. Benedict, and in 1937 he entered St. Mary's Abbey, Morristown, N. J. From 1938 by his vows of stability and obedience he was bound permanently to remain under the supervision and control of the Abbot. It is not disputed that he was a member of the community of Benedictine Monks at St. Mary's Abbey and looked upon the Abbot as the authoritative head of the Monks. Under the constitution of the Order of Benedictines the Abbot is under an obligation to provide for the maintenance and support of the Monks, the Monks themselves not owning or possessing in their own right any money or property of any value whatsoever. On the basis of

these facts it is asserted that the Abbot stood in loco parentis for the deceased.

The question is novel, no reported decisions having been found involving the specific issue. The authorities construing the phrase "in loco parentis" seem to be at variance as to whether a common law meaning was intended by Congress or a somewhat more inclusive meaning.[1] It will not be necessary nor will it be the purpose of this opinion to examine the conflict between those cases. However, an inquiry into the legislative history of the Act may be helpful in determining whether plaintiff is within the class of permitted beneficiaries.

The Senate Committee Report[2] on the amendatory Act of 1942 contains the following:

"Sections 7 to 9 are for the purpose of clarifying the existing legislation pertaining to the permitted class of beneficiaries, with particular reference to the terms 'parent', 'father', and 'mother.'

"These terms as used in the original act and the amendment of December 20, 1941, are not defined. As a result it could be held that only natural parents are included notwithstanding that in a given case the soldier may have been deserted by the natural parents and have been raised and supported wholly by an adoptive parent or parents. It is intended that they may be designated by the insured and that in case of automatic benefits, failure of designation or death of beneficiary, a person within the class as defined who last bore and exercised the parental relationship may be paid as beneficiary. Sections 8 and 9 are merely perfecting changes in existing law to conform to such intent."

The House Committee Report[3] is to the same effect. From analysis of these reports, and from consideration of the generally accepted idea of parenthood, it would seem that Congress intended the benefits of the Act to apply to beneficiaries who occupied a relationship to the insured similar to that of natural parents, rather than one who exercised dominant authority by virtue of his position as head of an institution or religious order. Nothing in the statute or its legislative history indicates that a broader group was intended. The cases allowing recovery to one standing in loco parentis are cases where the beneficiary was in a position very much similar to that of a natural parent.[4] The impelling reason for the association in those cases apparently was the desire to create a parent-child connection for its own sake. In the instant case it seems the association was for the purpose of achieving religious objectives, the Abbot being the head of the order for purposes of administration and spiritual leadership. The relationship established between the decedent and the Abbot of the Abbey in which he lived, was predicated on the acceptance of a spiritual bond, which had its reflection in the material dependency voluntarily assumed by the decedent. That spiritual bond, in conscience and by express pronouncement, controlling the decedent's physical state, while it may possess attributes for the persons involved, far more affecting than those attached to the natural and material order, was not, as we conceive it, within the contemplation of the framers of the act, the basis for constituting the creation of a relationship equivalent to that of parent and child. The recognitions and states created by the religious appreciations of the individuals involved are not within the purview of the instant legislation. Thus although the relationship had some of the attributes of a natural parent-child relationship it was not sufficiently similar to be regarded as one contemplated in the phrase "in loco parentis". The Court concludes, therefore, that plain-

[1] See : Zazove v. United States, 7 Cir., 156 F.2d 24; Niewiadomski v. United States, 6 Cir., 159 F.2d 683, Meisner v. United States, D.C., 295 F. 866, Howard v. United States, D.C., 2 F.2d 170.

[2] Sen. Rep. No. 1430, 77th Congress. 2nd Session.

[3] H. Rep. No. 2312, 77th Congress, 2nd Session.

[4] Zazove v. United States, 7 Cir., 156 F.2d 24; Leyerly v. United States, 10 Cir., 162 F.2d 79; Horsman v. United States, D.C., 68 F.Supp. 522; Baldwin v. United States, D.C., 68 F.Supp. 657; Smith v. United States, D.C., 69 F.Supp. 387; Jadin v. United States, D.C., 74 F. Supp. 589; Wood v. United States, D.C., 74 F.Supp. 732.

tiff did not stand in loco parentis to the insured within the meaning of the National Service Life Insurance Act as amended.

The designation of beneficiary by the insured having been ineffective, the third party defendants, sisters of the insured are entitled to the benefits of the insurance, as provided by Section 602(h) (3) (D) of the National Service Life Insurance Act, 38 U.S.C.A. § 802(h) (3) (D).

Let an order be entered.