**POWLEDGE v. UNITED STATES et al.**

**Civ. A. No. 3621.**

United States District Court
N. D. Georgia, Atlanta Division.

Feb. 7, 1950.

Robert P. McLarty, John K. Calhoun and Willis M. Everett, Jr., Atlanta, Ga.. (John K. Calhoun, Atlanta, Ga., of counsel) for plaintiff.

J. Ellis Mundy, United States Attorney, Atlanta, Ga. (Harvey H. Tisinger, Assistant United States Attorney, Atlanta, Ga., of counsel), for defendant.

Smith, Kilpatrick, Cody, Rogers & Mc-Clatchey, Atlanta, Ga. (Sidney Haskins, Atlanta, Ga., of counsel), for third party defendant.

HOOPER, District Judge.

Mary J. Powledge brought this action against the United States, alleging she was named beneficiary (as one in loco parentis) in a National Service Life Insurance policy upon the life of Henry G. Beasley, a deceased soldier. In their answers both the United States and the wife of assured (a third party defendant) contend that plaintiff's relationship as one standing in the place of a parent to the assured, did not begin until assured was twenty-one years of age and that therefore, plaintiff cannot recover.

Facts Appearing on Pretrial Hearing.

Upon a pre-trial hearing the following appears without dispute from allegations of plaintiff's petition as amended and statements of counsel:

Henry Golden Beasley, insured, was born May 6, 1910. Due to the ill health and poverty of his parents he was forced at nineteen years of age to leave home in 1929 to come to Atlanta to live with and be cared for as a son by his aunt, Marion Peacock. In June of 1931 because of further difficulties he was, with the advice of his said aunt, sent to the home of friends in Atlanta, viz. Mary J. Powledge (plaintiff herein) and her husband "to make his home and be cared for as a son in their home." At that time he was over twenty-one years of age and no contention is made that he was mentally or physically incompetent. He was accepted and cared for in that home as a child of plaintiff from that date until his death; he at all times did look to and consider plaintiff as his foster mother and plaintiff's home as his own home. Subsequently, his parents died. In 1940 he enlisted in the United States Army and in 1941 he was granted two policies of National Service Life Insurance, each of $5,000.00. In 1945 he designated as beneficiaries his son to the extent of $8,000.00 "and plaintiff, his mother (in loco parentis)" to the extent of $2,000.00. Thereafter in 1945 with said policies in effect, he met his death in an automobile crash while on active duty. By amendment plaintiff adds the following: "That shortly after the time that Henry G. Beasley came to live with Mary J. Powledge and intermittently thereafter, he found himself in extreme poverty with the result that Mary J. Powledge did

support him and care for him, as in comparable circumstances a natural mother would have done." No contention is made that plaintiff legally adopted insured, by either a formal or informal adoption, or that plaintiff ever became legally liable for his support or legally entitled to his services.

It was stated at the hearing that assured at the time of his death was living in a state of separation from his wife, but that fact seems immaterial, as no divorce decree or other decree had been rendered in any way affecting their marital status. If the plaintiff is not in loco parentis, then the widow will take.

Meaning of Phrase "In Loco Parentis."

The sole question presented is this: Is it legally possible that the plaintiff (designated beneficiary as one in loco parentis to insured) could be considered as one in loco parentis within the meaning of the National Service Life Insurance Act, 38 U.S.C.A. § 801(f), though it appears without dispute that her relationship to the insured commenced after he had attained his majority, that he was at no time under any mental or physical disability and that plaintiff did not adopt him formally or informally, nor did she ever assume any of the legal obligations of a parent. This question is being answered in the negative. The question is considered important because of conflict in decisions from different Circuit Courts of Appeals and because it will probably arise many times under policies covering veterans of World War Two.

This case rests entirely upon the meaning which Congress intended to give the phrase "in loco parentis" when it enacted the National Service Life Insurance Act in 1940 and when it amended the same in July, 1942. The Act provides in part: "The insurance shall be payable only to a widow, widower, child * * * parent [including person standing in loco parentis, if designated as beneficiary by the insured], brother, sister of the insured." See 38 U.S.C.A. § 802(g). The amendment of 1942 provided as follows: "The terms 'parent', 'father', and 'mother' include a father, mother, father through adoption, mother through adoption,

persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year, and a stepparent, if designated as beneficiary by the insured." 38 U.S.C.A. App. § 801(f).

When Congress enacted the above it will be presumed they had knowledge of similar provisions in the War Risk Insurance Act and decisions of the Court construing the same, as well as the interpretation placed upon the same by the department of government administering the Act, all of which will now be discussed.

Under the War Risk Insurance Act, of force during World War One, it was provided the insurance should be payable only to certain named beneficiaries, including a parent, and that the term parent included a father, mother, father through adoption, mother through adoption, and persons who had stood in loco parentis to a member of the military or naval forces at any time prior to his enlistment or induction for a period of not less than one year. That Act is substantially the same as the one here involved as regards this question.

The decisions are apparently in conflict. On February 28, 1924 the District Court, Western District of Missouri, decided the case of Meisner v. United States, 295 F. 866, 867. There it appeared that a twenty-four year old youth "sick, friendless, and penniless, wandered into the farm home" of a married couple. "That he was given medical attention, food, and lodging, and recovered from his illness * * * that [he] worked about the farm as would a son," and that "he was given what he needed or asked for in the way of clothing, necessaries, and spending money" and treated as a son. There was no agreement, express or implied, that he would receive any pay for his labors. The Court held that his benefactors stood in loco parentis to him and further that their daughter was legally his sister and entitled to recover as named beneficiary.

While the decision was not expressly planted upon the ground that the insured was sick and penniless, and while it does not recite that there was an informal adoption, it does use this significant language.

"If an adult is a legal subject of adoption, which formally establishes the relationship of parent and child, and if one, who assumes the obligations incident to the parental relation and takes the place of a parent without going through the formalities necessary to a legal adoption, stands in loco parentis to another, why should age condition the nature of the relationship? No sound reason appears why a person may not assume a parental relation toward an adult as well as toward a minor. The responsibilities and obligations may be fewer, but substantial ones remain." Meisner v. United States, 295 F. 866, at page 868.

It is important to note that this case upon its facts either shows an informal adoption of an adult, or it comes nearer to showing an informal adoption of an adult, than any other case I have been able to discover.

A few months after the above decision another District Court (Eastern District of Kentucky) on October 3, 1924 decided the case of Howard v. United States, 2 F.2d, 170. In the latter case the deceased had named one as beneficiary who contended he stood in loco parentis to the insured. Associate counsel of the Bureau advised that the claim should be rejected because the named beneficiary did not claim to have stood in loco parentis to the insured until 1916, when the latter was over the age of twenty-one. The court upheld a rejection of plaintiff's claim, stating in part as follows:

"The proper definition of a person in loco parentis to a child in the person who means to put himself in the situation of the lawful father of the child, with reference to the father's office and duty of making a provision for the child. * * * one cannot stand in loco parentis to another to whom the lawful father, if he has one, does not owe the duty of making provision for him. Where there is no duty of making provision, there can be no such performance of such duty. There may be provision, but it is not in performance of a duty to make it. Hence, one cannot stand in loco parentis to an adult. A parent does not owe the duty of making provision for his adult child." See, 2 F.2d at page 175.

The above ruling is supported by exhaustive citations of decisions based on the common law, a reading of which is essential to an understanding of this case.

In June, 1946 the Circuit Court of Appeals (Seventh Circuit) decided the case of Zazove v. United States, 156 F.2d 24, 27, the able opinion being written by Judge Minton, now Mr. Justice Minton. In that case the insured at age twenty-five went to live with the plaintiff who was forty-eight. Four years later he went into the Army and in 1943 died, his insurance policy naming the plaintiff, his alleged aunt, as beneficiary. It appeared the plaintiff was not actually his aunt but she claimed to be in loco parentis and judgment of the lower court dismissing her petition was reversed. The Court took the position that the Act should be liberally construed "to protect and effectuate the clearly expressed intentions of the service men." It rejected the necessity of dependency by the insured upon the person in loco parentis, stating as follows:

"One standing in the place of a parent may give more than material things to that relationship. Not only material help may flow from such a relationship. Some of the most worth-while, precious and cherished things in one's life may come therefrom wholly separate and apart from the rights of support and maintenance. In our opinion if the person named as beneficiary stands in fact in the relation of a parent toward the insured, yielding whatsoever there is of substance or sentiment to the relationship, the fact that the person who is the recipient of the fruits of such relationship is an adult is immaterial."

The court there assumed that since Congress by amendment opened up the word "parents" to include "step-parents" it was thereby repudiating the narrow construction given by the Veterans Administration to the words "in loco parentis." But, on the other hand, it may be urged with equal force, that by opening up the word "parents" to include "step-parents" and nothing else, Congress expressed its intention to keep this class of beneficiaries in well defined limits. This assumption appears further illustrated by the fact that step-parents,

more than any other group of persons, find themselves in loco parentis to their minor stepchildren within the legal meaning of that term. The following quotations from Long on Domestic Relations, 3rd Ed., Sections 270 and 255, will illustrate this point.

"A father has ordinarily no right to the services of an adult child, but if the child continues to live with and render services to the father, it will ordinarily be presumed that such services were rendered gratuitously and the child cannot recover therefor in the absence of a promise to pay for them. The same rules apply to services rendered by a child *to his step-parents, or to any other person in loco parentis.*" (Italics mine).

"Besides the regular and technical adoption just considered, the law recognizes a sort of *informal adoption, where a person, meaning to put himself in loco parentis, takes upon himself the duty of a father to make provision for a child not his own, to this extent assuming the parental character.* No legal duties or rights result from such relation, except that the person in loco parentis is under a qualified obligation to support the child, and has a corresponding right to his services. *The most familiar instance to this relation is found in the case of step-parents and step-children.*" (Italics mine).

The Zazove case, supra, was criticized in the case of Niewiadomski v. United States, 6 Cir., 159 F.2d 683 which deserves a careful reading. There the court, though stating that the principle here discussed was not controlling, carefully reviewed many earlier decisions.

In the case of Leyerly v. United States, 10 Cir., 162 F.2d 79, 86 the insured had named no beneficiary, automatic insurance being involved and the contest lay between a natural mother and persons allegedly in loco parentis. The latter, however, had assumed that relationship when the insured was a child, had reared him, and were themselves dependent on him when he died. Judge Murrah was of the opinion that, as the statute did not define the term in loco parentis, the common law concept controlled. The court did rule that "The [relationship] status, when once established, is presumed to continue, and one who avers

its discontinuance has the burden of proving it." As I shall point out, the relationship of natural parents will, a fortiori, likewise continue.

In the recent case of United States et al. v. McMaster, 174 F.2d 257, 259, the Fifth Circuit Court of Appeals (this circuit) again laid down the rule that this relationship must begin during minority or disability. This court is following that decision, though it may be true that the relationship did not exist under the facts of that case, regardless of the time when it commenced. The ruling in the Zazove case, supra, was there discussed at length and disapproved. The court stated that when Congress during World War One used this Latin phrase, in the War Risk Insurance Act, the Bureau then construed it as referring to minors; that there was at the time of its enactment a difference of opinion as to its meaning in the inferior courts. The court stated "the fact that Congress selected to express its intention a Latin phrase which has a definite meaning in law, strongly suggests that it was used in a technically legal sense."

Summing it all up it seems to the writer that the phrase in loco parentis, as used in the Act, must be given its long established legal meaning for the following reasons:

1— Because, as above pointed out, that was evidently the intent of Congress. The expression has been used by Congress now for over twenty years, and if Congress intended any other meaning than the legal meaning it has had many opportunities to say so.

2— The expression "in loco parentis" has a legally ascertainable meaning, to be derived from the common law and many later decisions. On the other hand, if we depart from that legal meaning the courts will have no chart or compass to guide them except the sympathies or views of each individual judge on the facts of each case. If an insured may, by denominating persons as in loco parentis to himself, thereby make them so, then the repeatedly manifested intent of Congress through the years to confine beneficiaries to those related by blood, marriage or adoption (formal or informal) would be destroyed.

3— A ruling that adult persons may become in loco parentis without the necessity

of either a formal adoption or an informal adoption, could lead to at least one rather strange and anomalous situation.

Let us assume that a young man over twenty one years old, mentally and physically sound, leaves his parental home and goes to a distant city to work. There he boards with an elderly couple who shower him with kindnesses and even extend to him temporary support when he is unemployed. A mutual devotion between them arises, but no legal relationship is created. He dies without wife or child and at a time when automatic insurance would be payable under the law to his parents. A contest ensues between his natural parents on the one hand, and the person allegedly in loco parentis on the other.

In the above circumstances, it seems clear that the insured was not survived by two sets of parents, each equally entitled to receive the insurance benefits. It seems equally clear that his natural parents continued to be such until and unless that relationship was legally terminated. It could have been terminated by legal adoption of their son, and we may even concede that it might have been terminated (at least to a qualified extent) by his informal adoption, as that would have resulted at least in the assumption by the adoptive parents of the duty to support him and the reciprocal right to his services. It seems clear, however, that the legal relationship of parent and child and all the legal incidents thereto not dissolved by the child attaining his majority, were not terminated merely by the creation of a friendship between their son and his allegedly new parents. If the reverse were true, it would necessarily follow that the son had, at the time of his death, two sets of parents eligible to receive the insurance, whether such insurance were automatic insurance on the one hand or whether beneficiaries were named on the other.

For the above reasons it is held that the plaintiff, Mary J. Powledge, has not qualified under the facts of this case as one in loco parentis to the insured, and consequently, judgment will be rendered in favor of the widow of assured, Lila Juanita Beasley, Third Party Defendant.