(8) Plaintiff made no efforts to obtain "regular" status;

(9) Plaintiff was never told he had obtained "regular" status;

(10) Plaintiff was dismissed by letter of February 20, 1973 for cause;

(11) This letter advised plaintiff that the reasons for his dismissal were dishonesty in claiming wages for time spent on his personal affairs, and repeated noncompliance with rules and regulations; and

(12) These reasons have been incorporated into plaintiff's permanent personnel record.

## CONCLUSIONS OF LAW

(1) Plaintiff had no property interest in continued employment so as to implicate due process;

(2) The charges against plaintiff besmirched his character and cast a cloud over his freedom to seek future employment, injuring his interest in liberty, and implicating due process;

(3) This Court has discretion to treat plaintiff's case in the nature of a Writ of Review and to accord him a full hearing to allow him to vindicate himself as to the charges against him; and

(4) Since this hearing will completely satisfy plaintiff's process interests, the adequacy of administrative procedures and minimum due process standards need not be decided in this case.

**Elizabeth YOUNT, Plaintiff,**

v.

**Casper W. WEINBERGER, Secretary, Department of Health, Education and Welfare, Defendant.**

**Civ. A. No. 73–861.**

United States District Court, W. D. Pennsylvania.

May 17, 1974.

**942**

William S. Lerach, Pittsburgh, Pa., for plaintiff.

David B. Atkins, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## MEMORANDUM and ORDER

McCUNE, District Judge.

The only issue before the court in this appeal from a decision of the Social Security Administration is whether the plaintiff ("claimant") was the "parent" of the deceased wage earner, Norman Yount, for purposes of § 202(h)(3) of the Social Security Act, 42 U.S.C. § 402(h)(3).[1]

We find that she was not. We will, therefore, grant the Secretary's motion

that we enter a summary judgment in his favor.

The plaintiff has filed suit[2] in an attempt to obtain parent's benefits as provided by § 202(h)(1) of the Act, 42 U. S.C. § 402(h)(1).

To receive parent's benefits under § 402(h)(1) a claimant must prove four elements:

1. The wage earner died fully insured;

2. The claimant is at least 62 years of age;

3. The claimant was receiving at least half her support from the wage earner; and

4. The claimant qualifies as the "parent" of the wage earner under the law.

The parties agree that the claimant has established the first three of these elements. It is the fourth element which is in dispute.

The Act defines "parent" in § 216(h)(2), 42 U.S.C. § 416(h)(2), as follows:[3]

"(2)(A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the

---

1. (3) As used in this subsection, the term "parent" means the mother or father of an individual, a stepparent of an individual by a marriage contracted before such individual attained the age of sixteen, or an adopting parent by whom an individual was adopted before he attained the age of sixteen. 42 U.S.C. § 402(h)(3).

2. This suit has been filed pursuant to 42 U. S.C. § 405(g) which gives this court jurisdiction to review a final decision of the Secretary of Health, Education and Welfare. The decision of the Administrative Law Judge denying plaintiff parent's benefits became the final decision of the Secretary when the Appeals Council refused review on August 15, 1973.

3. The plaintiff relies principally on Lyerly v. United States, 162 F.2d 79 (10th Cir. 1947), for the proposition that persons standing *in loco parentis* fall within the definition of "mother" and "father." On the basis of *Lyerly* the plaintiff argues that we should construe "parent" as used in § 402 to in-

clude those standing *in loco parentis* without referring to either § 416 or Pennsylvania intestacy law.

*Lyerly* was a suit involving the distribution of the proceeds of the decedent's National Service Life Insurance Policy. The court awarded the proceeds to the persons standing *in loco parentis* to the insured.

The plaintiff's reliance on *Lyerly* is misplaced for two reasons. First, there the court interpreted the Congress' use of the words "mother" and "father" in light of a statutory amendment enacted within months of the insured's death which specifically stated that the terms encompassed not only an insured's natural parents but those standing *in loco parentis*, as well. Second, § 416(h)(2) of the Social Security Act establishes the process by which "parent" must be defined. We cannot construe "parent" in § 402 of the Act without referring to § 416 for guidance. A statute must be read *in pari materia*, as an integrated whole, so as to give full effect to the legislative intent.

Secretary shall apply such law as would be applied in determining the devolution of the intestate personal property by the courts of the State in which such insured individual is domiciled at the time . . . of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such."

The legal question before the court is whether the claimant is the decedent's "parent" under the Pennsylvania Intestate Act of 1947, 20 P.S. § 1.3 et seq.[4] If she is then she is a "parent" for purposes of the Social Security Act and is entitled to parent's benefits.

There is no dispute about the mutual affection between Norman Yount and his "mother." The administrative record contains evidence which clearly establishes the depth and mutual warmth of the relationship. The record on this point has been fairly summarized in the defendant's brief.

"Plaintiff has established that she was born on May 17, 1886. She also established that when both parents of Norman (ne Fleming) Yount died, before Norman was two years old, plaintiff agreed to take Norman from the custody of his aunt and uncle, Paul and Mary Fleming, and care for him to prevent his being sent to an orphanage. Shortly after Norman came to live with her, the plaintiff had Norman baptized, and his surname changed to Yount. Plaintiff never legally adopted Norman Yount, however in short, plaintiff established that throughout his life decedent treated plaintiff as though she was in fact his natural mother, and plaintiff reciprocated in this treatment. Plaintiff was supported by Norman Yount when she became elderly. The administrative law judge stated that the above facts were established and not controverted." (References to transcript deleted).

The Administrative Law Judge found that the claimant stood *in loco parentis* to Norman Yount. Obviously that finding cannot be faulted.

He ruled in addition, however, that one standing *in loco parentis* is not a "parent" under the Act because under Pennsylvania law a person *in loco parentis* is not entitled to intestate distribution. We think that ruling was correct.

The Pennsylvania statute is silent on the point; and we have been referred to no cases interpreting the statute which hold that a person *in loco parentis* is a parent for purposes of intestate distribution. Accordingly, we will treat this as a typical *Erie*[5] problem and rule as we expect the Pennsylvania Supreme Court would rule if called on to interpret the intestacy statute.

While there is no authority on whether a person *in loco parentis* is entitled to intestate distribution on the death of a "child," there is precedent for the proposition that a "child" is not entitled to intestate distribution upon the death of the person who stood *in loco parentis* to him. Benson v. Nicholas, 246 Pa. 229, 92 A. 139 (1914); Benson v. Nicholas, 254 Pa. 55, 98 A. 775 (1916); Evans's Estate, 47 Pa.Super. 196 (1911). The cases do not use the term *in loco parentis,* but the effect is the same. The Pennsylvania Law is clear: There must be a legally effective adoption before a "child" may inherit from a "parent."

In *Evans's Estate* the appellant claimed the entire estate of the decedent

4. "§ 1.3 Shares of others than surviving spouse

The share of the estate, if any, to which the surviving spouse is not entitled, and the entire estate if there is no surviving spouse, shall descend in the following order:

(1) Issue. To the issue of the decedent.
(2) Parents. If no issue survives the decedent, then to the parents or parent of the decedent. . . ."

5. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

as an adopted child. She had been adopted by a duly executed deed of adoption (as provided by the Act of April 2, 1872, P.L. 31) and raised by the decedent as if she were his child. The deed, however, was never recorded and the Pennsylvania Superior Court ruled that the adoption was not legally effective. The Court concluded: "It is clear, therefore, that, if there was not a legal adoption by virtue of that instrument (an executed but unrecorded deed of adoption), the appellant's claim to the estate of the decedent must fail." 47 Pa. Super., at 201.

In the first *Benson* case, the plaintiff filed a bill in equity seeking a declaration that she was the legally adopted child of her "father," James B. Nicholas, who had died intestate and that she was entitled to a share of his estate. The Pennsylvania Supreme Court affirmed the trial court's dismissal of the bill and held she had not proved the adoption and was not entitled, therefore, to share in her "father's" estate, 246 Pa., at 231, 92 A. 139. The Court stated, in addition, that the proper way to assert a claim to the decedent's real estate was an ejectment action.

The plaintiff then filed a bill of ejectment to recover the real estate owned by James B. Nicholas arguing that she was entitled to it under the terms of a parol agreement to adopt her. The trial court directed a verdict for the defendant and the plaintiff appealed. The Pennsylvania Supreme Court affirmed stating at 254 Pa., 56–57, 98 A. 775:

". . . . She submitted the following point to the court: 'If the jury believe from the evidence that the plaintiff, when a child of less than a year old, was taken by the decedent, James Nicholas, and his wife, upon an agreement with the father of the child to take her and raise her as their own child, to adopt her, and in all respects to treat her as their own child, and to leave her any property which they would have upon their decease; and

that pursuant to said agreement, they did take the plaintiff and raised her as their own child, and always treated her as such, giving her their own name, and exercising the authority of parents over her, and maintaining the family relation during their lives, and that the said plaintiff was always thereafter recognized by the said James Nicholas and his wife as their own child; and she on her part performed the duties and services and rendered the obedience to them due from a child to its parents; and lived with them until she was married and maintained the family relation thereafter; and the said James Nicholas having died intestate possessed of the lands in question, leaving plaintiff to survive him, and without having legally adopted her, that said agreement should be given effect and the verdict of the jury should be for the plaintiff for the lands in question.' In refusing this point and properly directing a verdict for the defendant, the learned trial judge said 'The facts therein stated, if all found in favor of the plaintiff, would not justify a recovery of this land.'

Judgment affirmed."

Under Pennsylvania law a "child" cannot share in the intestate distribution of the estate of the person who stood *in loco parentis*. It follows that a person standing *in loco parentis* cannot share in the intestate distribution of the estate of the "child," and we think the Pennsylvania courts would make that ruling.

Since under the Pennsylvania intestacy statute the plaintiff, even though a person standing *in loco parentis,* is not a "parent," she cannot be considered a "parent" as defined in § 416(h)(2) of the Social Security Act and is not entitled to parent's benefits under § 402 of the Act.

Accordingly, the Secretary's motion for summary judgment will be granted and judgment will be entered in his favor.