## UNITED STATES et al. v. McMASTER.

### No. 12476.

United States Court of Appeals
Fifth Circuit.

April 25, 1949.

258

Thomas E. Walsh, and D. Vance Swann, both of Washington, D. C., H. S. Phillips, U. S. Atty., of Tampa, Fla., Charles R. Tripp, of Miami, Fla., Homer J. Hinders, of Celina, Ohio, and S. Grover Morrow, of Miami, Fla., for appellants.

Lyle D. Holcomb, of Miami, Fla., for appellee.

Before SIBLEY, McCORD and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

Mrs. Laura O. McMaster was named by Neil Putman as beneficiary in his policy of National Service Life Insurance issued June 20, 1943, her relationship being stated as "foster mother". He became missing in action on November 13, 1943, and in due time was declared presumed dead. She filed a claim on the policy, and his father, Jesse B. Putman, did also. The Veterans Administration held that she was not eligible as a beneficiary because on her own showing Neil Putman was more than 21 years old when they became acquainted, and so she could not have stood in loco parentis. Jesse B. Putman was held to be the lawful beneficiary and payments were made to him. Mrs. McMaster brought a timely action against the United States, and Jesse B. Putman was required to interplead. On a pretrial conference the district judge, following the decision of the Seventh Circuit in Zazove v. United States, 156 F.2d 24, held that a person could become in loco parentis to an adult. A trial without a jury on full evidence resulted in a judgment that she recover the full amount of the policy without deduction of payments made to any one else. The United States and Jesse B. Putman appeal.

The facts found to be true are these: "Neil Putman, the insured, came to Miami, Florida, in December, 1939, and at once met the plaintiff, Laura O. McMaster. He was then twenty-three years of age and she was more than fifty years his senior. Both resided in the same rooming house for a number of months,[1] but less than one year, until there was a change of management, whereupon he secured rooms at the Temple Court Apartments, and she, a little later, moved to property owned by her on 42nd Street. He remained at the Temple Court Apartments on N. W. 3rd Street, until he entered the service in October, 1941, and she did not ask him to join her because she was renting the front house and the small house occupied by her did not have adequate space.

"During the time they lived in the same rooming house plaintiff and assured formed a strong attachment for each other. He told her, and others, that his mother had died while he was young and he had been raised by a grandmother and had worked his way through several years of college. He was depressed and had almost exhausted his funds when he met plaintiff and she encouraged him and in the beginning loaned him small sums of money from time to time, cared for his clothing, saw that he got off to work and had a warm meal, and took care of his money. He gave her numerous gifts, had her to his apartment [at Temple Court Apartments] for meals on several occasions and visited her several times weekly after they

---

[1] The evidence is about six months.

no longer lived at the same place. He expressed to many persons his affection for her and how great was his debt of gratitude to her for her encouragement. Neither was financially dependent on the other." These are all the facts found, and all that could have been found favorable to her, prior to the time he entered the Army, October 8, 1941.

 Now as Mrs. McMaster was no kin to Putman, she could not be a beneficiary of this insurance under the law, 38 U.S.C.A. § 802(g) and § 801(f), unless as a person "who has stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year." No proof of such relationship arising after October 8, 1940, would, therefore, avail her. Her proof must show that she had attained that status before October 8, 1940. If he had been less than twenty-one years old then, we must regretfully say that nothing is found as a fact, or proven, that shows such a relationship. She testified, fully and we think frankly. She had made some misstatements in her claim to the Veterans Administration, but she in her testimony admitted and corrected them, and the trial judge did not have to reject her testimony as impeached. We accept it as credible. She testifies to nothing that puts her in the place of a parent, for that is what the Latin words mean. The fact that Congress selected to express its intention a Latin phrase which has a definite meaning in law strongly suggests that it was used in a technical legal sense. That sense is defined in Black's Law Dictionary: "In the place of a parent; charged factitiously with a parent's rights, duties, and responsibilities." 42 C.J.S., In, page 489, adds: "more specifically, the relationship which a person assumes toward a child not his own, holding the child out to the world as a member of his family toward whom he owes the discharge of parental duties;" with other similar definitions. See also, with reference to the provision of the statute before us, Leyerly v. United States, 10 Cir., 162 F.2d 79, 85, 86; Baldwin v. United States, D.C., 68 F.Supp. 657, 661; Maldonado v. United States, D.C., 69 F.Supp. 302; Smith v. United States, D.C., 69 F.

Supp. 387. This Latin phrase was used in the War Risk Insurance Statutes, and the Bureau then, as the Veterans Administration now, construed it as referring to minors. There was a difference of opinion in the inferior courts then as there is now. In Zazove v. United States, 7 Cir., 156 F.2d 24, the Court held that minority was not necessarily involved and that the relation might consist in mutual esteem and affection. The Sixth Circuit, in Niewiadomski v. United States, 159 F.2d 683, with less sentiment but perhaps with better reason, thought otherwise. Leyerly v. United States, above cited, supports the Sixth Circuit. We do not find it necessary to say that one can never stand in loco parentis to an adult in cases of mental or physical disability, or perhaps in extreme poverty, but we find nothing exceptional in young Putman's condition, and there is no proof that during the critical first ten months of acquaintanceship Mrs. McMaster undertook any responsibility of a parent towards Putman, nor he any as a son. There was no housing or feeding of him, no agreement or any contemplation that they would live together as a family. In fact when it became known that their boarding house was about to close he found an apartment, where he did his own cooking, on 3rd Street and she stayed where she was. She later moved to her own property on 42nd Street. She at the first encouraged him and noticed him and helped him get a job; made him loans and kept his money for him, and mended his clothes. Good women do as much for any decent, lonely young man with whom they are in contact. The woman in charge at his new apartment testifies to her own similar conduct. So do two women whom Putman knew before he came to Miami, and to whom he also sent presents and letters and felt gratitude. Mrs. McMaster testifies there were several young men at the boarding house, and she was friendly with all: "Yes, I was a sort of mother to them"; they all called her "Mom", and she sewed buttons on for them, too, but she was really interested in Putman. We do not think any definite relationship beyond mutual affection, and gratitude for help on Putman's part and a hope to be able to repay it, was

260

shown and that does not establish the necessary relationship toward a self-supporting adult of sound mind and body.

It is true, as the Court found, that after Putman got into the Army he manifested a deeper affection, became concerned about her arthritis and sent her $200 for treatment; that he spent his furlough in 1943 mostly at her house; spoke to others of desiring to help her pay off a mortgage and of eventually making his home with her; and did in fact during that year name her the beneficiary of his insurance; but all this was not before but long after he entered the service, and if these more definite plans would establish her in loco parentis, which we do not decide, they came over two years too late.

The motion for judgment in favor of the defendants ought to have been granted; and the cause is remanded to the District Court with directions to enter such judgment.

Reversed with directions.