**RICHARDS v. UNITED STATES.**
Civ. A. No. 212–F.

United States District Court
N. D. West Virginia, Fairmont Division.
Sept. 1, 1950.

Eugene T. Hague and Orville L. Hardman, both of Parkersburg, W. Va., for plaintiff.

C. Lee Spillers, U. S. Atty., of Wheeling, W. Va., and Howard Caplan, Asst. U. S. Atty., of Clarksburg, W. Va., for defendant.

WATKINS, District Judge.

Plaintiff seeks to recover the amount due on two policies of insurance in which she was named as principal beneficiary, issued to her nephew, Henry O. Lott, a member of the military service in the amount of $5,000 each, under the provisions of the National Service Life Insurance Act of 1940. 38 U.S.C.A. § 801 et seq. The defendant thought that plaintiff did not stand "in loco parentis" to the insured, and was therefore not an authorized beneficiary under the Act, and moved that Janie Elizabeth Bond, sister and contingent beneficiary, be made a party defendant, which motion was granted. The Veterans' Administration has held that Janie Elizabeth Bond, sister of the insured, was entitled to the proceeds of the policies. The only issue is whether the plaintiff stood "in loco parentis" to the insured.

The National Service Life Insurance Act of 1940, 38 U.S.C.A. § 802(g), which was in effect when the first policy was issued on April 1, 1942, provided: "The insurance shall be payable only to a widow, widower, child * * *, parent (including person in loco parentis if designated as beneficiary by the insured), brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes herein provided, * * *." This statute was amended July 11, 1942 by deleting the words in parenthesis, "including person in loco parentis if designated as beneficiary by the insured", and inserting the following provision, 38 U.S.C.A. § 801(f): "The terms 'parent', 'father', and 'mother' include a father, * * * persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year, * * *." It will be observed that under the original act, in effect when the first policy was issued, it was only necessary for the plaintiff to

show that she stood in loco parentis to the deceased at any time prior to his entrance into military service, whereas, under the 1942 amendment, in effect when the second policy became effective, it was necessary for plaintiff to show that such relationship existed for one year or more prior to his entrance into the service. This difference in the two policies is unimportant to the decision of this case because plaintiff claims that such relationship existed since 1935, many years before he entered the military service on March 4, 1942. He was killed in action August 26, 1944. He named "Nora May Lott", "Aunt" (in loco parentis) as beneficiary, and "Janie Elizabeth Bond", "Sister", as contingent beneficiary.

Defendant says that such relationship never existed, because (1) The evidence does not show that plaintiff ever assumed the duties and responsibilities of a parent, and (2) that the relationship contemplated by the statute must have arisen while the service man was a minor, whereas the plaintiff admits that the relationship did not arise until after he had attained his twenty-first birthday.

To support her claim plaintiff testified that she was the aunt by marriage of the insured; that he was one of eight children, and lived and worked on a farm all of his civilian life; that his mother died in 1935, shortly after he attained his twenty-first birthday; that he was possessed of a seventh grade education, somewhat backward, in good health, and unmarried, from the time of his mother's death until he entered the military service; that his only work was that of farm labor and he seemed to be unable to get employment in public works, although he sought employment on several occasions; that the father of the deceased was a tenant farmer and was unable to adequately provide for his family; that plaintiff's husband helped the father plough and pay doctor bills; that insured came to her home shortly after his mother's death, and stayed at her home and her son's home (Earl Lott) for several years. He stayed two or three days and nights per week at the home of Earl Lott. There was no agreement in reference to payment for room and board or for services that might be performed by either for the other. He worked on her farm, when he was not working for Earl Lott or others, and occasionally she gave him money and clothes. Whether the money and clothes were simple gifts, by request, or of necessity is not disclosed. While at the son's home, he worked for the son. While at her home he occupied a certain room with access to her entire house. He never paid for his room and board, and contributed nothing to the support of plaintiff or her family, and she never paid him for work he did for her. She says that she signed a note as his surety, for the purchase of an automobile. Earl Lott paid him $1. per day on an average of two or three days per week, while the insured stayed at his house and worked for him. The insured kept part of his clothes at Earl's home, and part of his clothes at the plaintiff's home. Both Earl and his mother were most uncertain as to how long it was after the death of the mother before the insured came to stay in their homes. Earl could not say whether it was one month or three years after the mother's death. Both Earl and his mother testified that the insured worked for nobody except them during the years 1935 to 1942, but the evidence of other disinterested witnesses shows that they were mistaken. He was employed from December 16, 1935 to July, 1936, in a barrel factory in Pennsylvania from which place he returned to his father's home, where he was living in May, 1937. While he lived in the home of plaintiff, and in the home of her son Earl, several different farmers in the neighborhood employed him to work on their farms for a few days at a time.

No claim was made by plaintiff that she was dependent upon the insured for any part of her support. No claim was made that the insured was either mentally or physically handicapped or that she performed any extraordinary service for him. Briefly, she furnished him room and board, allowing him access to her entire house during the period he stayed there, in return for which he worked on the farm for her without compensation.

■ The statute does not define the words "in loco parentis". No regulation of the Veterans' Administration defines the words. The statute is a remedial one and should be liberally construed to carry out the intention of the insured. McClure v. United States, 9 Cir., 95 F.2d 744; Sovereign Camp, W. O. W. v. Cole, 124 Miss. 299, 86 So. 802, Smith v. United States, D.C.R.I., 69 F.Supp. 387, 389. Jadin v. United States, et al., D.C.Wis., 74 F.Supp. 589. But the courts are limited to the provisions of the statutes, and without a showing on the part of plaintiff of the assumption by her of parental responsibilities, and on his part the responsibility of a child toward a parent, she does not stand in loco parentis to the insured, notwithstanding his intent that she should receive his insurance. There is nothing that the insured can write into the certificate of insurance in naming his beneficiary, which will permit his aunt to become his beneficiary if she did not, in truth and in fact, stand in loco parentis.

The leading case in support of view that the relationship of "in loco parentis" may arise for the first time after the insured has reached the age of twenty-one is Zazove v. United States, 7 Cir., 156 F.2d 24, decided June 27, 1946. That court said, 156 F.2d at page 26: " * * * Did Congress use the words in loco parentis as descriptive words, or did it use the words with the common-law limitation upon them, namely that the relation could not exist unless the insured were a minor? We find no limitation in the words of Congress. We think they were used as descriptive words and were not to be restricted to the 'stick in the bark' legal connotations usually attached at common law." Following that decision is Jadin v. United States, 74 F. Supp. 589, decided November 13, 1947, a District Court decision from the same circuit; Horsman v. United States, D.C.W. D.Mo., 68 F.Supp. 522; Meisner v. United States, D.C.W.D.Mo., 295 F. 866; Baldwin v. United States, D.C.W.D.Mo., 68 F. Supp. 657; and Smith v. United States, D.C.R.I., 69 F.Supp. 387.

■ There can be no serious dispute as to the common-law meaning of these words.

32 Words and Phrases, Perm.Ed., pages 415, 416 says: "A person standing 'in loco parentis' to a child is one who has put himself in the situation of a lawful parent, by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption." See Niewiadomski v. United States, 6 Cir., 159 F.2d 683, 686, where the court pointed out that at common law a parent is charged with the duty of educating and supporting a minor child, and with a continuing obligation thereafter in certain cases of physical or mental disability. The court said: "A parent has the right to the custody and control of a minor child together with the authority to take such disciplinary measures as are reasonably necessary to discharge the parental duty. A parent who is providing a home for his minor son and supporting him is entitled to his services and earnings. The same rights and duties exist when the relationship of in loco parentis has been intentionally assumed and established. The relationship is essentially different from the relationship of brother and sister, or the relationship of cousins, which relationships do not include the legal obligations existing between parent and child."

There is much good authority for the proposition that a person can not be in loco parentis to an adult. The leading case supporting this theory is Niewiadomski v. United States, supra. The court said: " * * * We do not agree with the construction that the words are descriptive rather than legalistic. The Act is not loosely drawn with respect to the specific persons entitled to be beneficiaries. On the contrary, it goes into detail and enlarges the scope of permitted beneficiaries, where the common-law meaning of the word used would be restrictive. It provides that the term 'child' includes an adopted child, and also that the term includes either a stepchild or an illegitimate child if designated as a beneficiary by the insured. The terms 'father' and 'mother' are broadened by defining them as including a father or mother through adoption. The term 'parent' is also broadened by defining it as a person who has stood in loco parentis to a

member of the military or naval forces for a period of not less than one year. Since Congress did not by the terms of the Act enlarge on the generally accepted common-law meaning of the term 'in loco parentis,' as it did in the case of children and parents, we believe that Congress intended the term to be construed in its usually accepted common-law sense and with regard to the limitations which the common law has consistently for a long period of time attached to it. Such is the well established rule of statutory construction." The Veterans Administration has since 1920 consistently applied the common-law concept of the term in loco parentis and has held that the relationship must have arisen while the service man was a minor. See Administrator's Decision 536, October 22, 1943. Other cases which have adopted this view, or cited the Niewiadomski case with approval are Strauss v. United States, 2 Cir., 1947, 160 F.2d 1017, certiorari denied Goldbaum v. United States, 331 U.S. 850, 67 S.Ct. 1741, 91 L. Ed. 1859, and United States v. McMaster, 5 Cir., 1949, 174 F.2d 257. In these cases the Second, Fifth and Sixth Circuits have all considered and discussed and criticized the earlier Zazove case. To the same effect is Neuhard v. United States, D.C.M. D.Pa., 83 F.Supp. 911, where the court refused to follow the Zazove case. In Howard v. United States, D.C.E.D.Ky., 1924, 2 F.2d 170, the insured was an adult. The court held that one could not stand in loco parentis to an adult. In Tudor v. United States, D.C.W.D.Wash., 36 F. 2d 386, the court in a ruling which was not necessary to the decision of the case held that one could not stand in loco parentis to an adult who was mentally and physically competent to provide for himself. In Bourbeau v. United States, D.C.D.Me., 1948, 76 F.Supp. 778, the court refused to follow the Zazove case, but found agreement with the views expressed by the Sixth Circuit in the Niewiadomski case and the Second Circuit in the Strauss case. In Maldonado v. United States, D.C.E.D.N. Y.1946, 69 F.Supp. 302, 303, the court had difficulty in perceiving the difference between "descriptive words", and the "common-law limitation upon them", but followed the majority view in these words: "The expression 'in loco parentis' could not have been chosen at random by Congress to mean that nearly any person, not eligible to be named as a beneficiary in this type of insurance, could be rendered so by merely affixing that label to his or her name. I should suppose that the choice of words was deliberate, not casual, and that the intention was to describe a status which, through the years, had come to be understood as possessing well recognized characteristics." In Leyerly v. United States, 10 Cir., 1947, 162 F.2d 79, the Tenth Circuit was of opinion that the common-law concept of the term in loco parentis controls, and that the relationship, as the term implies, is a standing in the place of or instead of, a parent; one charged fictitiously with a parent's rights, duties and responsibilities thereby following the Second, Fifth and Sixth Circuits. While not deciding whether the relationship may arise after the insured reaches the age of twenty-one, it holds that the relationship, once established during minority, may be perpetuated beyond the age of dependency. From these cases it will be seen that the words in loco parentis were used in the old War Risk Insurance Statutes, and the Bureau then, as the Veteran's Administration now, construed the words to refer only to minors. There was a difference of opinion then, as there is now, as to whether the relationship might exist as to an adult. United States v. McMaster, supra.

■ It is my opinion that the words "in loco parentis" must be given their common-law meaning. The relationship is primarily a question of intention to be shown by the acts, conduct, and declarations of the person alleged to stand in that relationship. In order for one to be regarded as in loco parentis he must put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation, with the result that his rights, duties and liabilities are the same as those of a lawful parent. Among these obligations is the responsibility for the support of the child. This view is supported by the weight of authority. Plaintiff has

failed to show that she supported the insured, or that she ever contemplated such support. He supported himself. The evidence shows that she only aided and assisted the insured instead of assuming any parental obligations or exercising parental control. He worked for plaintiff in exchange for his board and room, and during the same period worked for many others. This self support and his independence of action refute the parental control. The insured was the recipient of much kindness by the plaintiff, but kindness and generosity on the part of near relatives are not sufficient to establish the parental relationship. The aunt did much for the boy that a mother would do, but that is not sufficient to show that the mother's rights and obligations were transferred to or assumed by the aunt. The parental relationship means more than furnishing needed assistance to a close relative. An aunt might be willing to furnish needed assistance to a nephew over a long period of time without being willing to assume the legal obligations of a parent. There is no evidence of an intention by the aunt to assume any responsibility to the insured which is not wholly explainable by and consistent with the relationship existing between her and her nephew. The evidence does not show that either party contemplated financial dependence. No evidence was offered to show that plaintiff was ever dependent upon the insured for any part of her support or that any such obligation was contemplated by either party. In providing this insurance gratuitously, Congress intended to provide assistance to those dependent to some extent upon those in active service. Consequently, Congress limited the named beneficiaries to certain close relatives who might be dependents. Neuhard v. United States, supra.

 I do not agree with the cases which hold that a person cannot be in loco parentis to an adult. Such relationship, once established during minority, may, under circumstances such as mental or physical disability, continue after majority, as pointed out by Judge Murrah in Leyerly v. United States, supra. But where a person has attained his majority, since the parent is not lawfully charged with further responsibility toward the child except under very extraordinary circumstances, it should require considerable action and assumption of responsibilities on the part of both parties. It is not necessary for me to decide whether that relationship may legally arise for the first time after the insured became twenty-one years of age because plaintiff has wholly failed to show that the relation ever existed, irrespective of the age of the insured. See 3 A.L.R.2d 856–869, where the cases are collected and the essential principles of such relationship are set forth.

An aunt, as such, is not within the permitted classes named in the National Service Life Insurance Act. Therefore, the burden of proof is upon plaintiff to show that she comes within the definition of a mother or parent under the Act. Plaintiff has failed to do this.

An order may be entered in conformity to this opinion, awarding the proceeds of the policy to Janie Elizabeth Bond, sister and contingent beneficiary of the insured.