**BAUMET v. UNITED STATES et al.**

No. 270, Docket 22009.

United States Court of Appeals
Second Circuit.

Argued June 12, 1951.

Decided July 23, 1951.

Barnet L. Arlan, New York City, for appellants.

Simpson Thacher & Bartlett, New York City, Thomas Thacher and Robert W. Sweet, New York City, of counsel, for appellee.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and L. HAND, Circuit Judges.

SWAN, Chief Judge.

This is an action brought against the United States pursuant to the National Service Life Insurance Act of 1940, as amended, 38 U.S.C.A. § 817, to recover the proceeds of a $10,000 policy issued to William Baumet, Jr., who died in military service in October 1942. The plaintiff is the insured serviceman's father. Cross-claims were filed by several intervenors, and the United States admitted its liability and its readiness to pay such person as the court should adjudge entitled. The first cross-claimant was John J. Peters, a maternal uncle of the insured and the "designated" beneficiary of the policy. In 1948 and before the case came to trial, Peters died. His widow, Julie Peters, then intervened, claiming as his executrix the installments which matured before his death.[1] She also claimed in her individual right as a person standing in loco parentis to the insured,[2] instalments maturing after her husband's death. Four infant intervenors, half-brothers and half-sisters of the serviceman, by their guardian ad litem, filed a cross-claim alleging that they came next in line after their father, the plaintiff, on the statutory ladder of dispositive precedence.[3] The case was tried to the court without a jury. Judgment was rendered dismissing the plaintiff's complaint and the infants' cross-claim, and awarding recovery to Julie Peters as executrix and individually. The losing parties have appealed.

With respect to the infants' appeal no discussion is required. Their brief concedes that their claim is contingent, being predicated only on their right to take future instalments in the event of the death of the prior beneficiary. Upon the plaintiff's appeal the primary issue is the correctness of the court's finding that John and Julie Peters stood in loco parentis to the insured for a period of not less than one year prior to his enlistment in June 1941.[4] The court made very detailed findings of fact with respect to the insured's life from his birth on April 5, 1920 to his death in October 1942. Only a brief summary need be here recited. When he was five years old his parents separated and thereafter he lived with his mother until her death in 1936. He then lived for a year or so at the home of his father, who had remarried. In September 1937 he entered the University of Wisconsin. In his sophomore year he ran away from college, without notifying his father, and went to Florida. There, penniless, he was picked up by the police who, at his request, notified his uncle John J. Peters, who supplied money for his return to the home of John and Julie Peters. This was in November 1938. Continuously thereafter their home was regarded as his both by him and by them. After 1938 his father never saw him, manifested no interest in his career and contributed nothing toward his support. The son charged the father with misappropriating trust funds left to the boy by his mother, of which the father had possession as his guardian, and this led to litigation in the surrogate's court

---

1. See Baumet v. United States, 2 Cir., 177 F.2d 806, certiorari denied 339 U.S. 923, 70 S.Ct. 611, 94 L.Ed. 1346.

2. 38 U.S.C.A. § 801(f), as amended.

3. 38 U.S.C.A. § 802(h) (3) (D).

4. The pertinent sections of the statute are the following sections of Title 38, as amended:

Section 801(f) defines the terms "parent," "father" and "mother" to include "persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year".

Section 802(g) provides: "The insurance shall be payable only to a widow, widower, child * * * parent, brother or sister of the insured." It gives the insured the right to designate the beneficiary of the insurance, "but only within the classes herein provided".

Section 802(h) (3) provides to whom shall be paid instalments remaining unpaid at the death of any beneficiary:

"(C) if no widow, widower, or child, to the parent or parents of the insured who last bore that relationship, if living, in equal shares;"

Section 802(i) deals with payment of benefits if no beneficiary is designated by the insured. This section is applicable to instalments maturing after the death of John J. Peters.

and to a permanent estrangement between them. In 1939 the boy reentered the University of Wisconsin; he came back to his uncle's house with a broken wrist in January 1940 but again returned to Wisconsin in the summer of 1940 and went back to college in September. From 1938 on he had his own room in the home of his uncle and aunt in which he kept personal belongings.

Whether or not the evidence is sufficient to show that the plaintiff "abandoned" his son, as Judge Clancy found, it is clear that by the end of 1938 the son had decided to be done with his father. He was then 18 years old and his choice of whom to live with would ordinarily be accepted by a court, at least if he elected to live with a kindly-disposed uncle and aunt rather than a hostile father. The appellant argues that regardless of the showing of affection and generosity on the part of the boy's foster parents, the evidence is insufficient to establish that they assumed responsibility for his support—which we have held to be necessary to prove the existence of the in loco parentis relationship.[5] Judge Clancy found expressly that they did. We cannot say that this finding is "clearly erroneous"; hence it must stand. Indeed, we agree with it. When at the end of 1938 or early in 1939 the uncle, as the substituted guardian, took over control of the trust fund, it amounted to only $341. The boy's tuition at the University for the 1939 Fall term was paid out of this trust fund. How much, if anything, was left does not appear. He attended the University from September 1940 to June 1941, and the only source of funds for his education and support, other than the trust fund, if any, and small sums earned at two jobs during the summer of 1940, was what John and Julie Peters

sent him. Mrs. Peters, although her memory was naturally vague as to amounts, testified that they did send him money out of their own funds. We cannot doubt that during the year just prior to the insured's enlistment in June 1941, they stood "in loco parentis" to him, even if that phrase be construed strictly in accordance with the common law doctrine with respect to support. It is true that he became of age on April 5, 1941 but the in loco parentis relationship begun during minority is not lost when the minor attains majority.[6] Since John Peters stood in loco parentis to the insured and was the "designated" beneficiary his claim is superior to that of the natural father with respect to instalments which matured before his death, and they were correctly awarded to the executrix of John Peters.

With respect to instalments maturing after the designated beneficiary's death, since no contingent beneficiary was designated, the appellant contends that he is entitled to share them equally with Julie Peters even if the finding that she was in loco parentis is allowed to stand. Section 802(i) provides that "If no beneficiary is designated by the insured * * * the beneficiary shall be determined in accordance with the order specified in subsection (h) (3) of this section". Subsection (h) (3) (C), before its amendment in 1942, read as follows: "(C) if no widow, widower, or child, to the parent or parents of the insured, if living, in equal shares;"

Under this provision it may be well that the natural father would be entitled to share with the foster mother of the insured. But the amendment introduced the limiting clause "who last bore that relationship".[7] The insured can have but one maternal parent and one paternal parent.[8]

5. Strauss v. United States, 2 Cir., 160 F. 2d 1017, 1019, certiorari denied sub nom. Goldbaum v. United States, 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859, following the Sixth Circuit in Niewiadomski v. United States, 150 F.2d 683, certiorari denied 331 U.S. 850, 67 S.Ct. 1730, 91 L. Ed. 1859.

6. Bland v. United States, 5 Cir., 185 F.2d 395. Cf. Zazove v. United States, 7 Cir.,
156 F.2d 24, holding the relationship may exist even if begun after minority.

7. Sec. 802(h) (3): "(C) if no widow, widower, or child, to the parent or parents of the insured who last bore that relationship, if living, in equal shares;"

8. V. A. Reg. No. 10, paragraph 7, 38 U.S. C.A. note following section 744.

Since § 801(f) recognizes a person *in loco parentis* as a parent, the parents of William Baumet, Jr., at the time of his enlistment were Julie Peters, his foster mother, and John Peters, his foster father. Hence John Peters was the paternal parent who last bore that relationship to the insured, and the appellant cannot satisfy the statutory requirement. If Henning v. United States, D.C.D.Mass., 93 F.Supp. 380 holds the contrary we respectfully disagree with it. The award of future instalments to Julie Peters was correct.

Judgment affirmed.