**Arthur HELFGOTT and Connie Helfgott, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 72, Docket 24482.**

United States Court of Appeals Second Circuit.

Argued Nov. 14, 1957.

Decided Jan. 6, 1958.

Gerald Bouvier, New York City (Jack Flamhaft, New York City, on the brief), for plaintiffs-appellants, Arthur Helfgott and Connie Helfgott.

Milton E. Lacina, Asst. U. S. Atty., for the Southern District of New York, New York City (Paul W. Williams, U. S. Atty., for the Southern District of New York, New York City, on the brief), for defendant-appellee, United States of America.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and LEIBELL, District Judge.

MOORE, Circuit Judge.

This is an appeal from a judgment dismissing appellants' claim to the proceeds of a $10,000 life insurance policy issued to Fred Helfgott, deceased, a member of our Armed Forces, under the National Service Life Insurance Act of 1940, 38 U.S.C.A. § 801 et seq.

The original plaintiff, Leo Dobschiner, named as principal beneficiary and described as "Friend Guardian" in the insurance application, filed a formal claim for the insurance benefits under the policy on February 24, 1947 and thereafter brought this action. An uncle and aunt, Arthur and Connie Helfgott, who had also filed formal claims, which were denied, and a sister, Suzanne Helfgott, were impleaded as defendants by

the United States. Edward Helfgott (named as a contingent beneficiary) and his wife, who were the insured's father and mother, and the sister Suzanne Helfgott, predeceased the insured, the mother dying in 1941 of cancer, the father and sister in Nazi concentration camps. Leo Dobschiner died prior to the trial. These claims thus abating by law (United States v. Henning, 344 U.S. 66, 73 S. Ct. 114, 97 L.Ed. 101; Baumet v. United States, 344 U.S. 82, 73 S.Ct. 122, 97 L. Ed. 111) the action was amended and proceeded to trial before the court without a jury on the claim of Arthur and Connie Helfgott. The trial court dismissed the claim on the merits.

Under the applicable statutes (38 U.S. C.A. §§ 801, 802) "if the designated beneficiary does not survive the insured, the beneficiary shall be determined in accordance with the order specified in subsection (h) (3) of this section * * *" (§ 802). This section provides that the "parents of the insured who last bore that relationship, if living," shall be the beneficiaries if there be no widow, widower or child. The insured, who was unmarried, was killed in action on June 11, 1944.

Appellants' claim is based upon § 801 which includes within the definition of "parent," "persons who have stood in loco parentis to a member of the military * * * forces at any time prior to entry into active service for a period of not less than one year * * *."

In order to qualify as "parents" the claimants must prove: (1) that they assumed the state of *in loco parentis;* (2) that they held this relationship for at least one year; and (3) that they last bore that relationship.

The determinative question presented is: Did appellants stand *in loco parentis* to the insured for a year at any time prior to his entry into active service?

The insured, Fred A. Helfgott, lived with his parents in Czechoslovakia until 1938. Being of the Jewish faith the family was under increasing danger from Nazism. The insured's father, Edward Helfgott, in December 1938, sent his son Fred, then fifteen years old, to America under the sponsorship of Edward's brother Arthur. The insured arrived in America in December 1938 and commenced living in a four-room apartment with his uncle Arthur, his uncle's wife Connie, and their son. He brought with him about $150. In addition, his uncle and aunt received some $500 toward his support by the payment of debts owing in this country to his father, Edward. In December 1939, appellants, having had another child, rented a room for the insured in the home of the Dobschiners who lived in the building next door. Appellants paid $3 weekly rent and the insured continued to take his meals with them until July 1940, at which time an altercation between Arthur and the insured took place. Thereafter, appellants paid $10–$12 per week for the insured's room and board with the Dobschiners until May 1942. The insured was largely self-supporting by this time as he had worked full time since leaving school in June 1941.

The insured entered the United States Army on December 29, 1942 and on January 7, 1943 applied for and received a National Service Life Insurance policy for $10,000.

The facts from which the *in loco parentis* claim must be determined were established upon the trial by testimony of Arthur and Connie Helfgott and by rather voluminous correspondence from Fred's father, Edward, to his brother, Arthur, and to the Dobschiners when his son, Fred, was living there. In summary, the letters show that up to the last letter from Fred's father, dated October 9, 1941, Edward was not only concerned with the boy's welfare and education but was highly appreciative of the care which his son was receiving in the Dobschiners' home and asked them "to continue to represent my boy in parents' stead." For reasons probably attributable to Nazi censorship policies the fa-

ther, Edward, did not write after October 1941. His death announcement, as of February 4, 1943, indicates that he was deported to a concentration camp on August 4, 1942. However, there is no indication that he desired to surrender his position as Fred's father at any time or did so on his own volition.

■ It is true that Fred came to this country under his uncle Arthur's sponsorship and lived with him for some nine months. During that period, because of physical and psychiatric problems under which the boy was suffering, the aunt and uncle, by procuring medical and psychiatric treatment, some of which was undoubtedly at their expense, materially aided the health and welfare of their nephew. On the other hand, the fact that Fred after his nine months' stay with his aunt and uncle lived elsewhere, came under the care of others and became largely self-supporting, cannot be ignored. As was said in Niewiadomski v. United States, 6 Cir., 1947, 159 F.2d 683, 686, certiorari denied 1947, 331 U. S. 850, 67 S.Ct. 1730, 91 L.Ed. 1859, "The term 'in loco parentis,' * * * embodies more than furnishing material help to a close relative who is in need. One may be willing to furnish needed assistance to such a relative, even over an indefinite period of time, without being willing at the same time to assume the legal obligation of a parent * * *."

The statute does not define the term *in loco parentis.* Leyerly v. United States, 10 Cir., 1947, 162 F.2d 79, 85. In the Leyerly case the court felt that "the relationship is primarily a question of intention, to be shown by the acts, conduct and declaration of the person alleging to stand in that relationship. Meisner v. United States, D.C., 295 F. 866; Miller v. United States, 8 Cir., 123 F.2d 715." In Strauss v. United States, 2 Cir., 1947, 160 F.2d 1017, certiorari denied sub nom. Goldbaum v. United States, 1947, 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859, this court held that the receipt of payments for board and lodging by the person claiming to stand in *loco parentis* was sufficient to negative that status. In the Niewiadomski case the court held that to acquire the status of *in loco parentis* the foster parent should assume "the obligations incident to the parental relation without going through the formalities necessary to legal adoption" (159 F.2d at page 686). However, because the appellants have not met any of the requisite tests, it makes little difference here whether reliance be placed primarily upon the aspects of material support, or the intent and conduct of the aunt and uncle who claim the *in loco parentis* status or the intent of the insured.

■■ The appellants had the burden of proving by a fair preponderance of the credible evidence that for a period of at least one year at any time prior to his entry into military service, on December 29, 1942, they had assumed to act in the place of the insured's parents. The findings of the trial court are entitled to great weight because he was able to see and hear appellants' testimony. Here there was tangible evidence through the correspondence that the natural father was keenly interested in his son, his upbringing and guidance, and that he had not delegated these responsibilities to his brother. Furthermore, although the trial court recognized that the insured's intent was not controlling, it is interesting to note that he did not name his aunt and uncle, Arthur and Connie Helfgott either as primary or contingent beneficiaries under the policy. The conclusion is unavoidable that despite the close association of the first nine months after arrival in 1938 the insured became less and less dependent, both as to finances and moral guidance, upon his aunt and uncle and seems to have lived with the Dobschiners in an atmosphere of greater happiness and understanding.

The conclusions reached by the trial court that appellants were not *in loco parentis* to Fred Helfgott for one year as required by the statute are amply supported by the evidence.

Affirmed.