Josephine **BANKS**, Plaintiff-Appellee,

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

No. 113, Docket 25254.

United States Court of Appeals
Second Circuit.

Argued March 6, 1959.

Decided May 22, 1959.

536

Douglas A. Kahn, Atty., Department of Justice, Washington, D. C., Samuel D. Slade, Attorney, Civil Division, Department of Justice, Washington, D. C., (George Cochran Doub, Asst. Atty. Gen., Simon S. Cohen, U. S. Atty., for District of Connecticut, Hartford, Conn., Morton Hollander, Atty., Department of Justice, Washington, D. C., on the brief), for defendant-appellant.

Ufa E. Guthrie, Hartford, Conn., for plaintiff-appellee.

Before MEDINA and HINCKS, Circuit Judges, and MATHES, District Judge.*

MATHES, District Judge.

Death of the insured serviceman having occurred prior to the 1946 amendment of § 602(g) of the National Life Insurance Act eliminating the "restricted permitted class of beneficiaries as to policies maturing on or after August 1, 1946" [54 Stat. 1010 (1940), as amended by 60 Stat. 782 (1946), 38 U.S.C. § 802(g)], the sole ground of contest in the District Court was appellant's contention that appellee, the sole claimant, did not qualify as a member of the permitted class of beneficiaries.

The applicable pre-1946 provisions of § 602(g) are that: "The insurance shall be payable only to a * * * parent * * of the insured." [38 U.S.C. § 802(g) (1940).] While pre-1946 § 601(f), insofar as relevant here, provided that: "The term * * * 'parent' * * * include[s] * * * persons who have stood in loco parentis to * * * [the insured] at any time prior to entry into

* United States District Judge for the Southern District of California, sitting by designation.

active service for a period of not less than one year * * * " [38 U.S.C. § 801(f) (1940).][1]

From the uncontradicted evidence adduced at the trial, the District Court concluded that appellee had stood *in loco parentis* to the insured for more than one year prior to his entry into active service, and hence was qualified as designated beneficiary to receive the proceeds of the insurance.

The findings of fact upon which this conclusion is predicated are as follows:

"Plaintiff is a resident of Hartford, Connecticut. She was born August 14, 1885. While living on Main Street in Hartford in 1937 she became acquainted with Edward J. Alexander, born June 30, 1909, a musician who was estranged from his wife and was rooming alone at 12 Canton Street in a house whose backyard adjoined that of plaintiff. He was accustomed to drop in on plaintiff for coffee and sometimes for meals and reciprocated by mopping and sweeping stairways and running errands for plaintiff, who supported herself by minding pre-school children for working parents. Plaintiff occasionally did washing for Alexander and loaned or gave him shirts which had belonged to a son of plaintiff's * * * She admonished Alexander about excessive drinking, and at times had him sleep off in her apartment the effects of drinking so that he would be fit for his night's work with a band in a restaurant. In mid or late 1942 Alexander left Hartford with a circus band. He was inducted into military service March 24, 1943, at Richmond, Virginia. He intended to return to Hartford after the war and to live in plaintiff's house. He carried on a correspondence with plaintiff during his service, asking for and receiving her picture, for which he made a frame of native wood, and sending his picture to plaintiff.

"A large part of the correspondence was lost by plaintiff when she turned it over to a man she believed to be a lawyer to submit to the Veterans' Administration, which the man failed to do. Alexander sent plaintiff on one occasion a war bond as a gift. He took out a $10,000 National Service Life Insurance Policy, No. 10094071, effective April 1, 1943, designating a sister Lillian Alexander, as beneficiary. On his application for the insurance Mrs. Banks' name was typed in as beneficiary, X'ed out and his sister's name inserted. He designated Eleanor Alexander, wife, as sole beneficiary to receive the six months' death gratuity pay. He designated Mrs. Banks, the plaintiff, as emergency addressee. He paid premiums on his insurance policy for the period from April 2, 1943 to November 1, 1945.

"In March 1945 he wrote the Veterans' Administration stating that Mrs. Banks was the beneficiary. The Director of Insurance notified him that his sister had been the original beneficiary but that the certificate sent her at the address given by him had been returned unclaimed. Alexander thereupon made out and signed a change of beneficiary under the policy, giving the relationship as 'Parent (Loco-Parentis).'

"Alexander was injured by a falling tree and died October 18, 1945 on Saipan. This action was timely brought by plaintiff to recover on the policy. Efforts by government agencies, including the F.B.I. to locate the soldier's estranged wife, sister or other relatives have been unsuccessful. * * *

"The soldier looked on the plaintiff as a parent, as his closest remaining connection, the one to be notified if anything happened to him, the one he wished to benefit by his insurance in case of his death and to whom his effects should be sent, and her house the nearest thing to a home he could go to on release from the service, even though he never had lived in her home, was not related to her by

---

1. On September 2, 1958, the President approved Public Law 85–857 which codifies and enacts into positive law Title 38 of the United States Code containing the various provisions of Federal law relating to veterans. For provisions of new code as to National Life Insurance, see 38 U.S.C. §§ 701–724 (1958).

blood or marriage, and had not supported her when working. * * *

"Plaintiff had formed an attachment for the soldier as an older adviser and friend, making him welcome in her home prior to his service for a period longer than the one year minimum of the statute. * * * His formality in address in the correspondence may be outweighed by his desire to exchange pictures and his care for hers. The relationship was to a large extent like that of a mother and an emancipated adult son."

Pointing to the fact that the Congress has "followed a consistent policy of restricting the class of beneficiaries during war-time and liberalizing them during times of peace" [United States v. Henning, 1952, 344 U.S. 66, 71, 73 S.Ct. 114, 97 L.Ed. 101], appellant urges that the term *"in loco parentis,"* as employed in pre-1946 § 601(f) of the Act, should be given "its established, recognized common law meaning." And according to appellant: "At common law, the foster parent could not establish a *loco parentis* relationship unless he assumed the financial responsibility of the child."

This Court might be understood to have implied as much by way of dictum in Strauss v. United States, 2 Cir., 160 F.2d 1017, 1019, certiorari denied sub nom. Goldbaum v. United States, 1947, 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859, relying upon Niewiadomski v. United States, 6 Cir., 159 F.2d 683, certiorari denied 1947, 331 U.S. 850, 67 S.Ct. 1730, 91 L.Ed. 1859. There we affirmed the trial court's finding and conclusion that the claimed beneficiary did not stand *in loco parentis* to the insured serviceman.

In Baumet v. United States, 2 Cir., 1951, 191 F.2d 194, reversed on other grounds 1952, 344 U.S. 82, 73 S.Ct. 122, 97 L.Ed. 111, we again affirmed the trial court's finding and conclusion, this time that the claimed beneficiary did stand *in loco parentis* to the insured serviceman, and added the observation that in Strauss it was said that assumption of responsibility for support was necessary to establish existence of the relationship, "following the Sixth Circuit in Niewiadomski * * *" [191 F.2d at page 196, note 5.]

More recently, in Helfgott v. United States, 2 Cir., 1958, 250 F.2d 818, this Court affirmed the trial court's finding and conclusion that there the claimed beneficiary did not stand *in loco parentis* to the insured serviceman, once more relying upon Niewiadomski as authority for saying that, in order to acquire the status of *in loco parentis*, the foster parent "should assume 'the obligations incident to the parental relation without going through the formalities necessary to legal adoption.' [159 F.2d at page 686]." 250 F.2d at page 821.

We are now persuaded that our reliance upon the decision of the Court of Appeals for the Sixth Circuit in the Niewiadomski case was misplaced, for the rationale of Niewiadomski has been disavowed in the later case of Thomas v. United States, 6 Cir., 189 F.2d 494, certiorari denied 1951, 342 U.S. 850, 72 S.Ct. 78, 96 L.Ed. 641, where, following an extensive review of the English precedents, the Court concluded that "there never was any generally accepted common law meaning of the term, *in loco parentis*." 189 F.2d at page 505.

■ We accept the result of Judge McAllister's scholarship in the Thomas case, and express our agreement with Judge Murrah's observation in Leyerly v. United States, 10 Cir., 1947, 162 F.2d 79, that: "The assumption of the relationship is primarily a question of intention, to be shown by the acts, conduct and declaration of the person alleging to stand in that relationship." 162 F.2d at page 85; see United States v. Henning, supra, 344 U.S. at pages 77–78, 73 S.Ct. at page 120. As we view it, the very nature of the *loco-parentis* relationship is such that it must reside in the minds and hearts of the parties involved. To provide proof of the existence of the relationship, objective manifestations of the feeling must of course

appear. Usually these are to be looked for not only in things done and given each to the other, but more especially in the kind of service done and the kind of thing given.

In the case at bar, the insured's correspondence and appellee's testimony both disclose that they were not highly articulate or openly demonstrative in expressing their feelings. But that circumstance does not negative the existence of a feeling as deep as either was capable of.

■ Appellant next insists that in all events "a person may not enter into a *loco parentis* relationship with an adult." But this contention too rests upon the argument that, once adulthood is reached, it is impossible "to assume the prerequisite parental financial responsibility as none exists after the child's emancipation."

Financial support is only one objective manifestation of the existence of a *loco-parentis* relationship. As Mr. Justice (then Circuit Judge) Minton observed for the Court in Zazove v. United States, 7 Cir., 1946, 156 F.2d 24, 27: "One standing in the place of a parent may give more than material things to that relationship. * * * In our opinion if the person named as beneficiary stands in fact in the relation of a parent toward the insured, yielding whatsoever there is of substance or sentiment to the relationship, the fact that the person who is the recipient of the fruits of such relationship is an adult is immaterial." 156 F.2d at page 27; Id., 7 Cir., 1947, 162 F.2d 443, reversed on other grounds, 1948, 334 U.S. 602, 604, 68 S.Ct. 1284, 92 L.Ed. 1601.

It is to be noted that the Strauss, Baumet and Helfgott cases all involved a claimed *loco-parentis* relationship with a minor, rather than with an adult as here. Moreover, in Strauss this Court pointed out that since "the duty of any parent to support a child ceases when the

child comes of age * * * lack of intention to be responsible for the support of an adult does not necessarily negate the existence of the parental relationship." 160 F.2d at page 1019; cf. United States v. McMaster, 5 Cir., 1949, 174 F.2d 257, 259.

■ The policy of our law has always been to encourage family relationships, even those foster in character. See Woodward v. United States, 1951, 341 U. S. 112, 113, 71 S.Ct. 605, 95 L.Ed. 648. To hold, as we do now, that pecuniary advantage to one party is not essential to existence of a *loco-parentis* relationship, and that this relationship can arise between adult and adult as well as between adult and child, is in furtherance of this policy. See: Thomas v. United States, supra, 189 F.2d 494; Zazove v. United States, supra, 156 F.2d 24.

■ Finally, appellant attacks as inadmissible the reasons given by the District Court to support the conclusion that the *loco-parentis* relationship did exist in the case at bar. Assuming invalidity for one or more of the reasons given by the District Judge for his conclusion, this would not require reversal of the judgment; for as was said in Helvering v. Gowran, 1937, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224: "In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court * * * gave a wrong reason." 302 U.S. at page 245, 58 S.Ct. at page 158.

■ Having due regard to Judge Smith's opportunity to observe appellee and appraise her credibility, temperament and character [Fed.R.Civ.P. 52(a), 28 U.S.C.A.], we would not be warranted in disturbing the District Court's finding and conclusion on the mixed question of fact and law posed in this case as to the existence of a *loco-parentis* relationship.

The judgment of the District Court is affirmed.